# Exhibit C

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In the Matter of Arbitration Between
COTY, INC.,
                 Petitioner,
                                              06 CV 5698 (KMW)
          -against-                           ORDER

L'ORÉAL S.A.,
                 Respondent.
------------------------------------x
```

KIMBA M. WOOD, U.S.D.J.:

  Coty, Inc. ("Petitioner" or "Coty") petitions this Court to modify the second arbitral award issued in a matter involving a dispute about the closing net worth of two companies Petitioner sold to L'Oréal S.A. ("Respondent" or "L'Oréal"). The parties submitted the dispute for arbitration in 2004; in 2005, the arbitrator, KPMG LLP (the "Arbitrator" or "KPMG"), issued an award (the "2005 Arbitral Award") in favor of Respondent. Specifically, the 2005 Arbitral Award held that Petitioner had improperly characterized RMB 44,810,000 (about $5.4 million) as an "intercompany payable" instead of as a consumption tax reserve and that, as a result, Respondent was entitled to a post-closing purchase price adjustment. On March 27, 2006, this Court issued an Order (the "March 2006 Order") vacating the 2005 Arbitral Award on the ground that the Arbitrator exceeded its authority by attempting to make changes to a balance sheet that, according to the parties' agreement, was the unalterable starting point for

1

all subsequent changes. On remand, the Arbitrator issued another award (the "2006 Arbitral Award," attached as Ex. P to the Decl. of Michael Fishoff, dated July 27, 2006 (Fishoff Decl.), and as Ex. V to the Decl. of Yann Jaffré, dated Aug. 25, 2005 (Jaffré Decl.)) in favor of Respondent. Respondent has filed a cross-petition seeking to confirm the 2006 Arbitral Award. For the reasons set forth below, the Court denies Petitioner's petition to modify the 2006 Arbitral Award and grants Respondent's cross-petition to confirm.

I.  **Background**

The facts of this case are explained fully in the March 2006 Order, familiarity with which is assumed. The Court provides only a short summary here.

On January 23, 2004, Petitioner and Respondent executed a Master Assignment and Transfer Agreement (the "Master Agreement," attached as Ex. A to the Fishoff Decl. and to the Jaffré Decl.) under which Petitioner agreed to sell to Respondent, and Respondent agreed to purchase, two of Petitioner's wholly owned Chinese subsidiaries, Yue-Sai Kan Cosmetics (Shenzhen) Ltd. ("YSK Shenzhen") and Yue-Sai Kan-Coty Cosmetics (Shanghai) Ltd. ("YSK Shanghai") (collectively, the "YSK Companies"). The Master Agreement provided for a purchase price of $250,000,000, subject to a post-closing purchase price adjustment to be based on the

difference between the consolidated net worth of the YSK Companies shown in a Consolidated China Balance Sheet, dated June 30, 2003, prepared by Petitioner (the "June 2003 Balance Sheet," attached as Ex. B to the Fishoff Decl.) and the closing net worth of the companies as reflected in a Closing Statement of Consolidated Net Worth (the "Closing Statement," attached as Ex. C to the Fishoff Decl.), to be prepared by Petitioner within sixty days after closing.  Master Agreement §§ 1.01(b), 1.05. Petitioner represented that, although the June 2003 Balance Sheet was unaudited, it had been prepared in accordance with U.S. Generally Accepted Accounting Principles ("US GAAP").  Master Agreement § 2.07(a).  The Master Agreement called for the Closing Statement to be calculated in accordance with US GAAP and "also in a manner consistent with [Petitioner's] past practices." Master Agreement § 1.05(a).

Under the terms of the Master Agreement, Respondent was to notify Petitioner of any objections to the Closing Statement within 45 days of its receipt.  Any objections could be based only on: "(A) mathematical errors in the computation of the Closing Net Worth or (B) the Closing Net Worth not having been calculated in accordance with US GAAP (and also in a manner consistent with [Petitioner's] past practices and the preparation of the Financial Statements)."  Master Agreement § 1.05(b)(i).

3

The Master Agreement warns that "[a]ny components or calculations . . . not objected to in the Notice of Objection shall be final and binding on the parties. Master Agreement § 1.05(b)(i).

The June 2003 Balance Sheet contained an intercompany payable owed by YSK Shenzhen to Petitioner, in the amount of RMB 44,810,000.[1] In April 2004, Petitioner decided to eliminate the intercompany payable and convert it into income on the Closing Statement because, according to Petitioner, it would then realize the value of the intercompany payable through the post-closing purchase price adjustment provided for in the Master Agreement. Thus, the Closing Statement reflected an elimination of the intercompany payable and an increase of RMB 44,810,000 in the total stockholders' equity of YSK Shenzhen, which in turn resulted in a RMB 44,810,000 increase in the net worth of the YSK Companies. Petitioner therefore received a positive purchase price adjustment of RMB 44,810,000.

The parties closed on May 12, 2004, after which Petitioner delivered the Closing Statement to Respondent. Respondent sent

---

[1] The intercompany payable was initially designated as a tax reserve that YSK Shenzen established as Petitioner instructed. Petitioner directed YSK Shenzen to establish the reserve because it believed that a Chinese consumption tax might be imposed on YSK Shenzen. Between 1998 and 2001, this reserve grew to RMB 44,810,000. In April 2003, however, Petitioner concluded that it was unlikely that such a tax would be imposed. Petitioner decided to eliminate the reserve by recording its amount as an intercompany payable from YSK Shenzhen to Petitioner on the June 2003 Balance Sheet.

4

Petitioner a timely Notice of Objection, objecting to, inter alia, the elimination in the Closing Statement of the RMB 44,810,000 intercompany payable. Respondent argued that the intercompany payable had actually been an accrual for consumption tax corresponding to a reserve provided for in Petitioner's consolidated statements prior to June 2003, and that the elimination of this accrual in the Closing Statement was not justified by any changes in Chinese tax laws. The parties were unable to resolve this dispute and submitted the matter to the Arbitrator pursuant to Section 1.05(b)(ii) of the Master Agreement.

On January 20, 2005, the Arbitrator issued its decision. In that decision, the Arbitrator concluded that Petitioner's characterization of the consumption tax reserve as a intercompany payable did not comport with US GAAP. This Court concluded that the Arbitrator exceeded its authority by issuing an award that effectively changed the accounting of the June 2003 Balance Sheet, which, according to the Master Agreement, was the unalterable baseline from which the purchase price was to be measured. The Court therefore granted Petitioner's petition to vacate the 2005 Arbitral Award, denied Respondent's petition to confirm the award, and remanded the matter to the Arbitrator.

5

On July 6, 2006, the Arbitrator issued a second arbitral award in favor of Respondent, which concluded that Petitioner owed Respondent a post-closing price adjustment in the amount of $1,912,000.

Petitioner argues that the 2006 Arbitral Award must be modified because: (1) the Arbitrator based the 2006 Arbitral Award upon an improper methodology: the rationale that Petitioner improperly characterized the disputed RMB 44,810,000 on the June 2003 Balance Sheet as an intercompany payable instead of a consumption tax reserve; (2) Respondent presented new, contractually barred objections to the Arbitrator on remand; and (3) this Court, in the March 2006 Order, decided that the RMB 44,810,000 was an intercompany payable and a debt owed to Petitioner. The Court considers each argument in turn.

## II. Analysis

### A. Legal Standard

As the Court explained in the March 2006 Order, the Second Circuit "accord[s] a high degree of deference to an arbitrator's decision." 187 Concourse Assocs. v. Fishman, 399 F.3d 524, 526 (2d Cir. 2005) (per curiam). Thus, an "'arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'" Banco de Seguros del Estado v. Mutual Marine

6

Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003)(quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO, 954 F.2d 794, 797 (2d Cir. 1992); further internal quotation marks omitted). "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" Fishman, 399 F.3d at 526-27 (alteration in original) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Under Section 11 of the Federal Arbitration Act (the "FAA"), a court may modify the award "[w]here the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C. § 11(b). Thus, a court "must determine 'whether the arbitrator[s] acted within the scope of [their] authority,' or whether the arbitral award is merely the 'arbitrator[s'] own brand of justice.'" Banco de Seguros del Estado, 344 F.3d at 262 (alteration in original) (quoting Local 1199 v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992)). "The determination of the scope of arbitration is ordinarily one for the Court to make," unless the parties submit that question itself to the arbitrator. Katz v. Feinberg, 167 F. Supp. 2d 556, 563-64 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002). "The scope of authority of arbitrators generally depends

7

on the intention of the parties to an arbitration, and is determined by the agreement or submission." Brooks Drug Co., 956 F.2d at 25 (internal quotation marks and brackets omitted); accord Fishman, 399 F.3d at 527.

### B. The Arbitrator's Methodology

The Arbitrator, in issuing the 2006 Arbitral Award, respected the bounds of its authority as delineated in the Master Agreement and clarified in the March 2006 Order. The 2006 Arbitral Award is based upon the conclusion that, regardless of the propriety of the designation of the RMB 44,810,000 as an intercompany payable on the June 2003 Balance Sheet, Petitioner improperly eliminated the intercompany payable in April 2004. That elimination, according to the Arbitrator, did not comport with US GAAP or past practice, because it "was not accompanied by any actual payment by the [YSK] Companies to Coty." 2006 Arbitral Award 4. The effect of this elimination "was to artificially increase the net worth of the [YSK] Companies by RMB 44,810,000 between June 30, 2003 and the Closing Date." 2006 Arbitral Award 4 (emphasis added). Thus, the Arbitrator concluded, Respondent was entitled to a post-closing purchase price adjustment to account for that artificial inflation.

While the 2006 Arbitral Award states that the Arbitrator disagrees with Petitioner's initial designation of the RMB

8

44,810,000 on the June 2003 Balance Sheet, it rests upon the conclusion that Petitioner had no basis to eliminate the intercompany payable without a payment from the YSK Companies.[2] Thus, the Arbitrator articulated an independent ground for its conclusion that Respondent is entitled to a post-closing purchase price adjustment using the June 2003 Balance Sheet as a starting point. This methodology comports with the March 2006 Order.

### C. Respondent's Objection to the Intercompany Payable

Respondent's objection to Petitioner's treatment of the RMB 44,810,000 falls within the purview of the Master Agreement. On July 21, 2004, Respondent delivered to Petitioner a Notice of Objection stating "[i]n April 2004, accruals for consumption tax RMB 44.8 million were reversed. No information has been provided

---

[2] One paragraph of the 2006 Arbitral Award is somewhat confusing, as it can be interpreted as conflating the concepts of the intercompany payable and the consumption tax liability:

> In particular, it is KPMG's view that the Closing Net Worth was not calculated in accordance with the US GAAP and overstated the [YSK] Companies' net worth by RMB 44,810,000 -- because the practical effect of Coty's book-keeping entries was to eliminate a liability for that amount -- even though, in reality, on the Closing Date, the [YSK] Companies continued to have an exposure to the Chinese taxing authorities for consumption tax.

2006 Arbitral Award 5. Given that the Arbitrator clearly rests the 2006 Arbitral Award upon the conclusion that Petitioner improperly eliminated the intercompany payable after the June 2003 Balance Sheet but before closing, this apparent conflation does not support an inference that the Arbitrator in fact relied upon a prohibited methodology.

9

to us to justify this change in such accruals." L'Oréal's Notice of Objection 3, attached as Ex. C to Jaffré Decl.; Am. & Completion of Notice of Objection, attached as Ex. E to Jaffé Decl. Thus, Respondent has objected both to Petitioner's initial designation fo the RMB 44,810,000 and to Plaintiff's elimination of the intercompany payable.[3]

### D. Scope of March 2006 Order

Petitioner's final argument is that this Court's March 2006 Order "decreed" that the disputed RMB 44,810,000 is an intercompany payable and therefore "should have to be paid." Petr.'s Reply Mem. at 6. The March 2006 Order, however, determined only that the June 2003 Balance Statement was the unalterable baseline from which adjustments would have to be made. The Court expressed no opinion as to the merits of the Aribtrator's findings. Thus, the Court expressed no opinion as to whether the intercompany payable "should have to be paid."

Equally important, the statement that the intercompany payable "should have to be paid" begs the question as to which

---

[3] Petitioner makes a technical argument that Respondent objected only to Petitioner's treatment of the RMB 44,810,000 on the June 2003 Balance Sheet. Respondent's notice of objection, however, stated that Respondent believed that Petitioner had improperly eliminated the RMB 44,810,000 from the Closing Statement. Because Respondent's objection references the disputed RMB 44,810,000, it plainly objected to that "component" of the Closing Statement. Thus, Petitioner has failed to establish that Respondent waived the objection.

10

entity should have to pay: Respondent or the YSK Companies. The Arbitrator concluded that Petitioner improperly eliminated the intercompany payable, thereby shifting the burden from the YSK Companies to Respondent. Petitioner has failed to carry its heavy burden to show that the Arbitrator's decision is contrary to law.

### IV. Conclusion

For the reasons stated above, Petitioner's petition to modify or vacate the 2006 Arbitral Award is denied [1]. Respondent's cross-petition is granted [10] and the 2006 Arbitral Award is confirmed.

The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

Dated:   New York, New York
         April 6 , 2007

_____
Kimba M. Wood
United States District Judge

11