**Exhibit 1
Part 1
(Complaint)**

Steven R. Schindler (SS 3511)
Jonathan L. Hochman (JH 7072)
Daniel E. Shaw (DS 8129)
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
COTY INC.,

          Plaintiff,

  -against-

L'ORÉAL S.A.,

          Defendant.
------------------------------------------------------------x

07 Civ. 6206

**COMPLAINT**

Plaintiff Coty Inc. ("Coty"), by its attorneys Schindler Cohen & Hochman LLP, for its Complaint against L'Oréal S.A. ("L'Oréal") alleges as follows upon personal knowledge as to its own acts and upon information and belief as to all other matters:

## NATURE OF THE CASE

1. This is an action for unjust enrichment stemming from the acquisition of two of Coty's Chinese subsidiaries by L'Oréal. When L'Oréal agreed to purchase the YSK Companies (defined below) from Coty, the balance sheet of the YSK Companies included an intercompany payable to Coty in the amount of RMB 44,810,000, or approximately $5.9 million.[1]

2. In order to receive payment on that intercompany payable, Coty sought to reverse the RMB 44,810,000 intercompany payable into income before the sale of the YSK Companies

---

[1] "RMB" is a common abbreviation for the currency of the Peoples Republic of China, the Chinese Yuan Renminbi, and it will be used to indicate amounts of Chinese currency throughout this Memorandum. On June 29, 2007, the exchange rate was 1USD=7.612 RMB.

{00031566}

closed, and then to employ the post-closing purchase price adjustment mechanism to realize the value of the RMB 44,810,000.

3. Despite the fact that L'Oréal had no objection to Coty's resolution of other intercompany payables in this manner, L'Oréal objected to the resolution of the RMB 44,810,000 intercompany payable in this fashion. Moreover, L'Oréal has refused to allow the RMB 44,810,000 intercompany payable to be settled at all, with the result being that it still sits on the books of the YSK Companies.

4. As long as that RMB 44,810,000 remains in the YSK Companies' coffers, L'Oréal has garnered a significant windfall. Simply put, if the intercompany payable is not paid to Coty, then L'Oréal has received the YSK Companies *and* an additional RMB 44,810,000 of extra value which was not contemplated by the parties' bargain.

5. L'Oréal has been unjustly enriched at Coty's expense. To allow L'Oréal to retain the RMB 44,810,000 contravenes equity and good conscience. Therefore, Coty asks that this Court order judgment on Coty's behalf in an amount not less than RMB 44,810,000, plus statutory interest and attorney's fees.

## PARTIES

6. Coty is a privately-held Delaware corporation whose principal place of business is located at Two Park Avenue, New York, New York.

7. L'Oréal is a publicly-traded French corporation whose corporate headquarters is located at 41 rue Martre, Clichy, France.

## JURISDICTION AND VENUE

8.  This Court may exercise jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy is in excess of $75,000.

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a). Petitioner Coty's principal place of business is located here, and through the Master Agreement governing the transaction at issue (defined below), L'Oréal has irrevocably accepted and submitted to the *in personam* jurisdiction and venue of the United States District Court for the Southern District of New York.

## FACTS

### L'Oréal Purchased The YSK Companies From Coty On The Basis Of The June 30, 2003 Financial Statements

10.  On January 23, 2004, Coty agreed to sell to L'Oréal two of Coty's wholly-owned Chinese subsidiaries, Yue-Sai Kan Cosmetics (Shenzhen) Ltd. ("YSK Shenzhen") and Yue-Sai Kan-Coty Cosmetics (Shanghai) Ltd. ("YSK Shanghai" and collectively, the "YSK Companies") for $250 million dollars that was payable in cash and subject to a post-closing purchase price adjustment. The parties executed the Master Assignment and Transfer Agreement between Coty Inc. and L'Oréal S.A., dated as of January 23, 2004 (the "Master Agreement"), memorializing this transaction. (A copy of the Master Agreement is attached hereto as Exhibit A.)

11.  The Master Agreement makes clear that the assets reflected on the June 30, 2003 Consolidated China Balance Sheet prepared by Coty (the "June 30, 2003 Balance Sheet") is what L'Oréal agreed to purchase. To that end, the June 30, 2003 Balance Sheet was explicitly incorporated into the Master Agreement and attached thereto as Schedule 2.07:

> Schedule 2.07 sets forth the unaudited adjusted consolidated balance sheet of the [YSK] Companies as of June 30, 2003 (the "*Balance Sheet*") and the unaudited adjusted consolidated income statement of the Companies for the fiscal years ended June 30, 2003, 2002 and 2001 (collectively with the Balance Sheet, the "*Financial Statements*"). The Financial Statements ... fairly present in all material respects the consolidated financial condition, results of operations and stockholders' equity of the Companies at or for the respective periods then ended.

(Master Agreement, § 2.07(a) (original emphasis).) Thus, Coty and L'Oréal agreed to accept the June 30, 2003 Balance Sheet as the unalterable transaction baseline.

12. The June 30, 2003 Balance Sheet indicated that the YSK companies had stockholder equity of RMB 137,463,000. The transaction also called for a purchase price adjustment based upon the June 30, 2003 Balance Sheet. The post-closing purchase price adjustment mechanism was intended to account for any change in value from RMB 137,463,000 that occurred between June 30, 2003 and the closing date.[2]

**The June 30, 2003 Balance Sheet Included
An Intercompany Payable From YSK Shenzhen To Coty**

13. The June 30, 2003 Balance Sheet included as a liability an intercompany payable owed by YSK Shenzhen to Coty. The amount of that intercompany payable was RMB 44,810,000, or, approximately $5.9 million. Because it was listed on the June 30, 2003 Balance Sheet, the $5.9 million obligation to Coty was part of what L'Oréal bought when it bought the YSK Companies.

14. In April 2004, prior to the closing date, Michael Fishoff and Steven Danatos, Coty's CFO and its Senior Vice President for Tax and External Development, respectively, informed Yann Jaffré, L'Oréal's Director of Financial Structures, that Coty intended to reverse the RMB 44,810,000 intercompany payable, which had been listed on the June 30, 2003 Balance

---

[2] The value on the closing date was to be provided to L'Oréal by Coty in a Closing Statement of Consolidated Net Worth (the "Closing Statement") (*id.* at § 1.05(a).)

Sheet, into income on the Closing Statement. In this way, Coty would realize the value of the intercompany payable of RMB 44,810,000 through the post-closing purchase price adjustment mechanism. Notably, other intercompany payables were resolved in the same manner without objection by L'Oréal.

15. On the Closing Statement, then, the RMB 44,810,000 was no longer shown as an "Intercompany - interest free" long term debt as it had been on the June 30, 2003 Balance Sheet. Instead, that RMB 44,810,000 was reflected on the Closing Statement as an increase in the "Total Stockholders Equity" of YSK Shenzhen – *i.e.*, the net worth of the company – and accordingly the consolidated "Total Stockholders Equity" of the YSK Companies. Therefore, the Closing Statement reflected an increase in the net worth of the YSK Companies of RMB 44,810,000 over the net worth reflected on the June 30, 2003 Balance Sheet. This increase in net worth required a purchase price adjustment in favor of Coty in the amount of RMB 44,810,000.

**L'Oréal Objected To Characterization Of The RMB 44,810,000 As An Intercompany Payable Rather Than A Tax Reserve**

16. The transaction closed on May 12, 2004, and Coty delivered the Closing Statement to L'Oréal. Thereupon, L'Oréal objected to the characterization of the RMB 44,810,000 on the June 30, 2003 Balance Sheet as an intercompany payable between YSK Shenzhen and Coty. Despite the fact that the June 30, 2003 Balance Sheet reflected the financial reality of the YSK Companies as L'Oréal had agreed to purchase them, L'Oréal, nevertheless, argued that the June 30, 2003 Balance Sheet should have reflected the RMB 44,810,000 item as a tax reserve.

17. A brief review of the genesis of the RMB 44,810,000 intercompany payable may be helpful in placing L'Oréal's objection and the subsequent arbitration into context. In 1998, Coty created a reserve against the possibility that the Chinese tax authority would impose a

{00031566}                                      - 5 -

consumption tax on YSK Shenzhen. Coty directed its subsidiary, YSK Shenzhen, to accrue the reserve amount as a contingent liability on its US GAAP books. Between 1998 and 2001, this tax reserve grew to RMB 44,810,000 (or approximately $5,900,000).

18. In April 2003, Coty decided, that the accrued tax reserve of RMB 44,810,000 was no longer necessary because the risk that the Chinese government would impose a consumption tax, for which the RMB 44,810,000 reserve had been set aside, had never materialized. Nor had there been any change in the Chinese tax laws to indicate that such a tax would be levied by the Chinese government at any point in the future. Coty therefore eliminated the RMB 44,810,000 tax reserve and established an intercompany payable from YSK Shenzhen to Coty in that amount.

19. L'Oréal's objection to the Closing Statement was that it was improper under US GAAP for Coty to have eliminated the contingent tax reserve because there was no change in Chinese law that would justify its removal. But this reversal of the tax reserve was done *prior to June 30, 2003 and was incorporated into the June 30, 2003 Balance Sheet.* Thus, the RMB 44,810,000 intercompany payable was a part of the YSK Companies as L'Oréal agreed to purchase them.

### As This Court Held In Its 2006 Award, The RMB 44,810,000 Was Indeed An Intercompany Payable

20. When the dispute over the intercompany payable was not resolved by Coty and L'Oréal, it was submitted to KPMG LLP ("KPMG") for arbitration pursuant to Section 1.05(b)(ii) of the Master Agreement, which requires arbitration only for disputes involving the post-closing purchase price adjustment mechanism. Both Coty and L'Oréal submitted position papers to KPMG, and the dispute was eventually decided by KPMG in favor of L'Oréal.

21.  In agreeing with L'Oréal, KPMG concluded that its review of Chinese tax law indicated that the RMB 44,810,000 tax reserve should not have been changed to an intercompany payable on the June 30, 2003 Balance Sheet. In so finding, KPMG impermissibly altered the June 30, 2003 Balance Sheet which formed the unalterable baseline for the entire transaction.

22.  On March 27, 2006, this Court, by Judge Kimba M. Wood (Index No. 05 Civ. 3845 (KMW)) issued an Order (the "2006 Order") vacating the portion of the KPMG award dealing with the RMB 44,810,000 intercompany payable on the ground that KPMG had exceeded its arbitral authority. (A copy of the 2006 Order is annexed hereto as Exhibit B.) The Court held that KPMG's determination impermissibly focused on the RMB 44,810,000 as a tax reserve rather than as an intercompany payable, as represented on the June 30, 2003 Balance Sheet. By insisting that the RMB 44,810,000 be characterized as a tax reserve rather than an intercompany payable, KPMG ignored the limits on its arbitral power set by Section 1.05(b)(i) of the Master Agreement. (*See* 2006 Order at 19-20.) Finding KPMG's overreaching exercise of arbitral authority to be grounds for vacating the pertinent sections of the Award, the Court remanded the case back to KPMG to determine "whether any adjustment to the Closing Statement involving [the RMB 44,810,000] is warranted, in accordance with the constraints upon the scope of arbitration authority imposed by the Master Agreement, particularly Section 1.05(b)(i)." (2006 Order at 24-25.)

**On Remand, KPMG Ruled That The RMB 44,810,000 Intercompany Payable Could Not Be Resolved Through The Purchase Price Adjustment Mechanism**

23.  On remand to KPMG, L'Oréal advanced two reasons for its entitlement to the award: (1) that despite the clear impact of this Court's March 27, 2006 Order, the RMB 44,810,000 item should still be viewed as a tax reserve rather than as an intercompany payable; and (2) that Coty should not have resolved the intercompany payable, and it should remain on

the YSK Companies' books as an "intercompany payable" in name only – subject to L'Oréal's disposal as it sees fit.

24. In its July 6, 2006 Remand Award ("Remand Award"), KPMG again ruled in L'Oréal's favor. In so doing, KPMG again stated that the RMB 44,810,000 intercompany payable should instead be characterized as a tax reserve. KPMG also based its award on its opinion that the RMB 44,810,000 intercompany payable was wrongly reversed into income between the June 30, 2003 Balance Sheet and the Closing Statement, such that the RMB 44,810,000 intercompany payable should appear on the Closing Statement as an unresolved debt to Coty. In other words, KPMG ruled that the purchase price adjustment mechanism could not be used by Coty to resolve the RMB 44,810,000 intercompany payable.

**On April 26, 2007, This Court Confirmed KPMG's Second Arbitral Award**

25. On April 6, 2007, this Court, again by Judge Wood (Index No. 06 Civ. 5698 (KMW)), issued an Order (the "2007 Order") confirming the Remand Award. (A copy of the 2007 Order is annexed hereto as Exhibit C.) The Court held that KPMG, in its Remand Award, had "respected the bounds of its authority as delineated in the Master Agreement and clarified in the March 2006 Order." (2007 Order at 8.) In so holding, the Court found that, while the Remand Award states that KPMG disagrees with Coty's designation of the RMB 44,810,000 as an intercompany payable and even conflates the concepts of the intercompany payable and the consumption tax liability, KPMG nevertheless based the Remand Award on the conclusion – permissible under the terms of the Master Agreement – that Coty improperly eliminated the intercompany payable after the June 2003 Balance Sheet but before closing. (*See id.* at 8-9 & fn. 2.)

{00031566}
- 8 -

26. With regard to the characterization of the RMB 44,810,000 as an intercompany payable, the Court re-affirmed its holding from the 2006 Order determining that "the June 2003 Balance Statement was the unalterable baseline from which adjustments would have to be made." (*Id.* at 10.) The Court left open the question of whether the RMB 44,810,000 intercompany payable should be paid, and if so, by whom. (*Id.*)

27. The practical effect of the confirmation of KPMG's Remand Award has been to restore the unresolved RMB 44,810,000 intercompany payable to the Closing Balance Sheet.

**The RMB 44,810,000 Intercompany Payable Remains On The YSK Companies' Books As An Existing Debt Owed To Coty**

28. As this Court ruled originally in its 2006 Order, and later re-affirmed in its 2007 Order, the June 30, 2003 Balance Sheet – which represented the financial reality of the YSK Companies as L'Oréal agreed to purchase them – contained an unresolved intercompany payable of RMB 44,810,000 owing to Coty. This same RMB 44,810,000 intercompany payable remained unresolved on the Closing Balance Sheet. As long as the RMB 44,810,000 intercompany payable remains unresolved, L'Oréal has garnered a windfall. L'Oreal has refused to pay, or to instruct its subsidiary to pay, the intercompany payable to Coty

29. When L'Oréal purchased the YSK Companies, it purchased them with an unresolved debt of RMB 44,810,000 owing to Coty, as reflected on the June 30, 2003 Balance Sheet. To the extent L'Oréal refuses to resolve the RMB 44,810,000 intercompany payable, or causes its subsidiary to not resolve the intercompany payable, the YSK Companies purchased by L'Oréal are worth RMB 44,810,000 more than what L'Oréal paid for them. In other words, the value of the YSK Companies, at the point at which L'Oréal agreed to purchase them, was the value of their assets *minus* the RMB 44,810,000 intercompany payable owed to Coty – this is readily illustrated by the June 30, 2003 Balance Sheet. By not resolving the intercompany

payable, the worth of the YSK Companies to L'Oréal is the value of their assets *plus* RMB 44,810,000.

30. Simply put, by refusing to resolve the RMB 44,810,000 intercompany payable, L'Oréal has unjustly enriched itself at Coty's expense. Allowing L'Oréal to retain this RMB 44,810,000 of extra value in the YSK Companies, for which it gave no extra consideration to Coty, cannot be countenanced in equity and good conscience.

31. It has been conclusively established by this Court that the RMB 44,810,000 is an intercompany payable, as it is characterized on the June 30, 2003 Balance Sheet. However, it has also been established, in the Remand Award and this Court's 2007 Order, that the purchase price adjustment mechanism provided for in the Master Agreement was not the appropriate way to resolve the RMB 44,810,000 intercompany payable. Thus, Coty seeks now to resolve the RMB 44,810,000 through this equitable action.

32. It is unjust for L'Oréal not to pay Coty the RMB 44,810,000 owed to it pursuant to the intercompany payable reflected on the June 30, 2003 Balance Sheet and the Closing Statement, and unless L'Oréal pays, it will have been unjustly enriched at Coty's expense.

## COUNT I – UNJUST ENRICHMENT

33. Coty repeats and re-alleges the allegations contained in paragraphs 1-32 above, as if set forth fully herein.

34. When L'Oréal agreed to purchase the YSK Companies, the June 30, 2003 Balance Sheet showed that there was an unresolved RMB 44,810,000 intercompany payable owing to Coty. That intercompany payable remained unresolved on the Closing Balance Sheet and still remains unresolved.

35. By not resolving, or not allowing its subsidiary to resolve, the RMB 44,810,000 intercompany payable, L'Oréal has increased the value of the YSK Companies by RMB 44,810,000 that should have otherwise been paid to Coty.

36. L'Oréal has therefore been unjustly enriched at Coty's expense in the amount of RMB 44,810,000.

37. To permit L'Oréal to retain the RMB 44,810,000 would constitute a windfall and would be against equity and good conscience.

38. The contract between the parties does not govern the subject matter at issue — namely, the resolution of the RMB 44,810,000 intercompany payable.

39. L'Oréal's actions have damaged Coty in an amount to be determined at trial, but in any event not less than RMB 44,810,000, or approximately $5,900,000, plus statutory interest and attorney's fees.

## COUNT II – CONVERSION

40. Coty repeats and re-alleges the allegations contained in paragraphs 1-39 above, as if set forth fully herein.

41. The RMB 44,810,000 intercompany payable constitutes a specifically identifiable fund of money that L'Oréal was under a duty to return to Coty.

42. L'Oréal's refusal to return the RMB 44,810,000 to Coty is an unauthorized exercise of control over Coty's property by L'Oréal which interferes with, and is in defiance of, Coty's superior possessory right in that property.

43. Coty has demanded that L'Oréal pay the RMB 44,810,000 owed to Coty, and L'Oréal has refused that demand.

44. L'Oréal has therefore converted specific funds in the amount of RMB 44,810,000 rightfully belonging to Coty.

45. L'Oréal's actions have damaged Coty in an amount to be determined at trial, but in any event not less than RMB 44,810,000, or approximately $5,900,000, plus statutory interest and attorney's fees.

## COUNT III – BREACH OF CONTRACT
## (IN THE ALTERNATIVE)

46. Coty repeats and re-alleges the allegations contained in paragraphs 1-45 above, as if set forth fully herein.

47. In the alternative, should this Court determine that resolution of the RMB 44,810,000 is governed by the Master Agreement, then L'Oréal has breached that contract.

48. The Master Agreement, by incorporating the June 30, 2003 Balance Sheet, provides that L'Oréal was not to receive the RMB 44,810,000 represented by the payable to Coty.

49. While resolution of this payable may not be covered by the purchase price adjustment mechanism provided for in the Master Agreement, that agreement provides for other remedies.

50. L'Oréal has refused to allow for resolution of the RMB 44,810,000 intercompany payable.

51. L'Oréal has therefore breached the duty of good faith and fair dealing inherent in all contracts.

52.  L'Oréal's actions have damaged Coty in an amount to be determined at trial, but in any event not less than RMB 44,810,000, or approximately $5,900,000, plus statutory interest and attorney's fees.

**WHEREFORE**, Coty respectfully requests that the Court grant judgment in its favor and against L'Oréal in an amount to be determined at trial, but in any event not less than RMB 44,810,000, or its U.S. dollar equivalent, plus statutory interest and attorney's fees.

Dated: New York, New York
July 3, 2007

SCHINDLER COHEN & HOCHMAN LLP

By: _____
Steven R. Schindler (SS 3511)
Jonathan L. Hochman (JH 7072)
Daniel E. Shaw (DS 8129)

100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300 (tel)
(212) 277-6333 (fax)

*Attorneys for Plaintiff Coty Inc.*