**Exhibit 2**
**(Arbitration Award)**



**KPMG LLP**
1601 Market Street
Philadelphia, PA 19103-2499

Telephone 267 256 7000
Fax 267 256 7200
Internet www.us.kpmg.com

July 6, 2006

Steven Danatos, Senior Vice President
Coty Inc.
1325 Avenue of the Americas
New York, NY 10019

Yann Jaffré, Director of Financial Structures
L'Oréal
41 rue Martre
92110 Clichy – France

**Re: Coty Inc. and L'Oréal SA Purchase Price Dispute**

Messrs. Danatos and Jaffré:

KPMG LLP ("KPMG") was engaged to serve as the "Independent Auditor" (the "Independent Auditor") pursuant to Section 1.05 (b) (ii) of the Master Assignment and Transfer Agreement between Coty Inc. ("Coty") and L'Oréal SA ("L'Oréal"), dated as of January 23, 2004, (the "Master Agreement") to resolve the disputed items identified, in accordance with the dispute resolution procedures described in Section 1.05 (b) (ii) of the Master Agreement. The purchase price dispute between L'Oréal and Coty relates to the transfer of 100% of the registered share capital of Coty YSK Shanghai and YSK Shenzen (the "Companies") to L'Oréal.

On January 20, 2005 KPMG issued a determination in an impartial manner based on inquiry, investigation and other procedures, as KPMG deemed necessary and what KPMG believed to be in accordance with Section 1.05 (a) of the Master Agreement. It is important to note that KPMG reviewed Section 1.05 (b) (i) as part of KPMG's analysis. Section 1.05 (b) (i) of the Master Agreement states the following:

> "Any Notice of Objection shall specify in reasonable detail the basis for the objections set forth therein and shall include only objections based on (A) mathematical errors in the computation of the Closing Net Worth or (B) the Closing Net Worth not having been calculated in accordance with US GAAP (and also in a manner consistent with Seller's past practices and the preparation of the Financial Statements)...Seller and Buyer acknowledge that (1) the sole purpose of the determination of the Closing Net Worth is to adjust the Purchase Price so as to reflect the difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date and (2) such difference can be measured only if the calculation is done using the same accounting principles, practices, methodologies, and policies used in the preparation of the Financial Statements."



Messrs. Danatos and Jaffré
July 6, 2006
Page 2

Below is the overall purchase price adjustment schedule which was included in KPMG's January 20, 2005 report. The net effect of all adjustments resulted in an amount of $1,912,000 to be paid by Coty to L'Oréal.

| | **L'Oréal's Position** | **Coty's Position** | **Final Determination** |
|---|---|---|---|
| *Unit: 1 = 1 000 RMB – Exchange rate at the Closing Date: 1 USD = 8.2773)* | | | |
| **Consolidated Net Assets at the Closing Date** | **188,928** | **188,928** | **188,928** |
| | | | |
| Carve-out of Adidas Inventory | (13,209) | (13,209) | (13,209) |
| **Settlement of Intercompany Payable (A)** | (44,810) | - | (44,810) |
| **Reversal of Accrual for Enterprise Income Tax (B)** | (4,708) | - | (4,708) |
| Unrealized profit & Inventory | (1,803) | (1,803) | (1,803) |
| **Under-provided staff welfare payable (C)** | (4,329) | (1,848) | (4,329) |
| DTT adjustment related to accrual of year-end bonus | (125) | (125) | (125) |
| Accruals of retention bonus | (28) | (28) | (28) |
| **Insufficient provisions for marketing, etc. expenses (D)** | (5,004) | - | - |
| **Reversal of overaccruals of Discounts, Markdowns, AD&P and Sales Returns (E)** | - | 36,700 | - |
| Assessment of the deferred tax assets/liabilities | - | - | 1,717 |
| **Total adjustments Related to Disputed Items** | **(74,016)** | **19,687** | **(67,295)** |
| | | | |
| **Adjusted Consolidated Net Assets at the Closing Date** | **114,912** | **208,615** | **121,633** |
| | | | |
| **Consolidated Net Assets at June 30, 2003** | **137,463** | **137,463** | **137,463** |
| | | | |
| **Purchase price adjustment in K RMB:** | **(22,551)** | **71,152** | **(15,830)** |
| | | | |
| ***Purchase price adjustment in K USD:*** | ***(2,724)*** | ***8,596*** | ***(1,912)*** |





On April 15, 2005 Coty filed a petition with the United States District Court, Southern District of New York, to modify or vacate the arbitration award determined by KPMG relative to the treatment of the RMB 44,810,000 on the grounds that:

> "the arbitrator, KPMG exceeded its authority by issuing an award that effectively changed the accounting of the opening balance sheet"

On May 27, 2005 L'Oreal filed a cross-petition for an order to confirm the arbitration award relative to this matter. On March 27, 2006, United States District Judge Kimba M. Wood granted Coty's petition to modify or vacate the arbitration award relative to the RMB 44,810,000 and denied L'Oreal's cross-petition to confirm the arbitration award relative to this item.

In response to the Judge's ruling, KPMG was asked to re-examine its determination relative to the treatment of the RMB 44,810,000. L'Oreal and Coty prepared various documents for KPMG's consideration as part of the review:

- Coty and L'Oreal submissions dated June 2, 2006
- Coty and L'Oreal responses dated June 9, 2006
- Coty and L'Oreal final comments dated June 16, 2006

KPMG has carefully reviewed its initial determination issued on January 20, 2005, Judge Wood's ruling dated March 27, 2006 and all of the information submitted by the parties, including the additional submissions prepared by Coty and L'Oreal. KPMG has determined the following relative to the treatment of the RMB 44,810,000:

- There was no intent on the part of KPMG to exceed its authority as arbitrator as stipulated in the Master Agreement. KPMG is committed to honor Judge Wood's March 27, 2006 ruling. KPMG is mindful of the Court's ruling and respects the fact that KPMG is bound by the mechanics of the Master Agreement. As the Court stated on page 16 of its opinion, "the Master Agreement . . . established that [June 30, 2003] Balance Sheet as an unalterable starting point for the calculation of any subsequent changes". Thus, KPMG's determination is not based on KPMG's attempt to "restate" or make changes to the June 30, 2003 balance sheet. However, it is KPMG's view that it is important to set out the background below, as it is relevant to this disputed issue.

- As a factual matter, and by way of background, based on the information submitted by the parties (much of which is undisputed) it is KPMG's view that Coty inappropriately characterized the RMB 44,810,000 item as an intercompany payable on the June 30, 2003 balance sheet. Based on the information submitted to KPMG, the reserve for Chinese consumption tax was first established for the fiscal year ending June 30, 1998. The reserve balance was adjusted through June 2001 when it reached the amount of RMB 44,810,000 and remained on the Companies balance sheet until April 2003. Also, based on the information provided to KPMG, it appears that the consumption tax accrual was in accordance with GAAP, and in particular FAS 5.

  KPMG understands that in April 2003 Coty removed this consumption tax accrual from the Companies' balance sheet and replaced it with an entry (for the exact same RMB/dollar amount) labeled as an intercompany payable due to Coty. Based on the information provided by the parties, it is KPMG's view that Coty did not have a basis under FAS 5 to eliminate the





accrual from the Companies books for the Chinese consumption tax. KPMG has not seen evidence in the parties' submissions that would support the claim that it was appropriate under GAAP to eliminate the accrual for Chinese taxes. It is KPMG's view that in accordance with GAAP (and the Companies' "past practice" from at least 1998 to April 2003) the amount should have been included as a tax reserve on the June 30, 2003 Financial Statements and the May 12, 2004 Closing Statement of Consolidated Net Worth.

- Based on the information provided by the parties, it appears that in April 2004, prior to the Closing Date, Coty directed the Companies to record an entry which completely eliminated (on the Companies' books) the RMB 44,810,000 intercompany payable due to Coty. KPMG believes that it is undisputed that at this time, no money or other assets moved from the Companies to Coty with regard to the elimination of this intercompany payable.

- KPMG continues to believe that as a result of Coty's treatment of the tax accrual and the intercompany payable, L'Oreal should be entitled to a purchase price adjustment under the Master Agreement. In general, the payment of cash to eliminate an intercompany payable would not impact the Consolidated Net Worth of the Companies, because the payment of cash to settle an outstanding account payable would result in a simultaneous debit (reduction) to the payable account and a credit (also a reduction) to the cash asset account, thus having a null effect on the Consolidated Net Worth (because the company's assets and liabilities are reduced by the same amount).

- Based on the information provided by the parties, between June 30, 2003 and the May 2004 Closing Date, the intercompany payable related to the RMB 44,810,000 was not accounted for in a manner consistent with GAAP or in a manner consistent with the above treatment. In April 2004, Coty reversed the RMB 44,810,000 out of the intercompany payable account and into income – but without any simultaneous payment of cash or other assets to Coty. The impact of this entry (and the elimination of the account payable to Coty) caused an artificial increase in the Consolidated Net Worth of the Companies between June 30, 2003 and the Closing Date.

- KPMG has seen no evidence to support the reversal into income of the RMB 44,810,000 amount included in the June 30, 2003 balance sheet as an intercompany payable amount – especially because the reversal of the intercompany payable was not accompanied by any actual payment by the Companies to Coty.

- In KPMG's view, because the intercompany payable was reversed into income in April 2004, and was not accompanied by any actual payment by the Companies to Coty, and because the intercompany payable was not reflected on the Closing Statement of Consolidated Net Worth, the Closing Net Worth was not calculated in accordance with GAAP and also was not prepared in a manner consistent with past practices. To the contrary, it appears that the effect of Coty's actions with respect to this intercompany payable was to artificially increase the net worth of the Companies by RMB 44,810,000 between June 30, 2003 and the Closing Date. In actuality, the net worth of the Companies on the Closing Date was RMB 44,810,000 less than the net worth reflected on the Closing Date Statement of Net Worth.





- In particular, it is KPMG's view, that the Closing Net Worth was not calculated in accordance with US GAAP and overstated the Companies' net worth by RMB 44,810,000 – because the practical effect of Coty's book-keeping entries was to eliminate a liability for that amount – even though, in reality, on the Closing Date, the Companies continued to have an exposure to the Chinese taxing authorities for consumption tax.

- Because the Closing Net Worth was not calculated in accordance with US GAAP (and also in a manner consistent with Coty's past practices and the preparation of the June 30, 2003 Financial Statements), it is KPMG's determination that the RMB 44,810,000 should be included in order to appropriately calculate the Consolidated Net Worth of the Companies at the Closing Date.

- In particular, KPMG understands that Section 1.05(b) of the Master Agreement provides that:

  "Seller and Buyer acknowledge that (1) the sole purpose of the determination of the Closing Net Worth is to adjust the Purchase Price so as to reflect the difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date and (2) such difference can be measured only if the calculation is done using the same accounting principles, practices, methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements."

  KPMG noted the Section 2.07 of the Master Agreement states the following:

  "...sets forth the unaudited adjusted consolidated balance sheet of the Companies as of June 30, 2003 (the "Balance Sheet") and the unaudited adjusted consolidated income statement of the Companies for the fiscal years ended June 30, 2003, 2002 and 2001 (collectively with the Balance Sheet, the "Financial Statements"). The Financial Statements have been prepared in conformity with generally accepted accounting principles in the United States ("US GAAP") (and also in a manner consistent with Seller's past practices), except for the absence of footnotes and other presentation items, and fairly present in all material respects the consolidated financial condition, results of operations and stockholders' equity of the Companies at or for the respective periods then ended...

As stated above, based on the information provided by the parties KPMG believes that the actions taken by Coty with respect to the intercompany account payable between June 30, 2003 and the Closing Date in May 2004 caused a change in the Companies' Net Worth. Thus, in the words of clause (1) quoted above from the Master Agreement, there was a "difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date." Furthermore, in the words of clause (2) quoted above, KPMG believes that the difference between the net worth on June 30, 2003 and the net worth on the Closing Date in May 2004, relating to the treatment of the intercompany payable for RMB 44,810,000, can be measured "using the same accounting principles, practices, methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements." Based on the information provided by the parties, on June 30, 2003, the Financial Statements contained an intercompany account payable of RMB 44,810,000. The parties have not identified any "accounting principles, practices,





methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements" which would have allowed Coty, in April 2004, to eliminate the intercompany payable from the Companies' books and records in connection with a "transaction" where the intercompany payable was not actually paid at the time (or ever). Thus, "using the same accounting principles, practices, methodologies, and policies used in the preparation of the June 30, 2003 Financial Statements," it is KPMG's view that Coty's treatment of the RMB 44,810,000 intercompany payable artificially inflated the net worth of the Companies on the Closing Date; therefore, L'Oreal is entitled to a purchase price adjustment in its favor in the amount of RMB 44,810,000.

The net effect of all purchase price adjustments results in an amount of $1,912,000 to be paid by Coty to L'Oréal.

****************************

KPMG's consulting services were performed in accordance with the American Institute of Certified Public Accountants ("the AICPA") Statement on Standards for Consulting Services and do not constitute an engagement to provide audit, compilation, review, or attest services as described in the pronouncements on professional standards issued by the AICPA.

This report may be used by Coty and L'Oréal only in the instant matter. This report may not be disclosed, copied, published, or used, in whole or in part, without the prior written permission of KPMG, except as ordered by legal process or court of competent jurisdiction. Should you need further assistance, please do not hesitate to call me (267) 256-1839 or Dana McFerran (267) 256-2646.

Very truly yours,

KPMG LLP

Ronald P. Forster
Partner