UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COTY INC.,

                              Plaintiff,

                                                    07 CV 6206 (KMW)

                    – against –

                                                    *(Electronically Filed)*

L'ORÉAL S.A.,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
# MOTION  TO DISMISS THE COMPLAINT

BAKER & McKENZIE LLP
Charles H. Critchlow (CC–4905)
James Bailey (JB-0677)
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100
*Attorneys for Defendant L'Oréal S.A.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 5

ARGUMENT ........................................................................................................... 10

    1.    Coty can make no claim against L'Oréal
        for unjust enrichment ................................................................. 12

    2.    Coty can make no claim against L'Oréal for conversion ............. 14

    3.    Coty can make no claim against L'Oréal
        for breach of contract ................................................................. 15

CONCLUSION ......................................................................................................... 18

ANNEX:  July 2006 Arbitral Award

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) ........................................................................................18

*Anthracite Capital, Inc. v. MP-555-West Fifth Mezzanine, LLC,*
    2005 U.S. Dist. LEXIS 9179 (S.D.N.Y. May 18, 2005) ...............................15

*Calvada, Inc. v. Fidelity & Deposit Co.,*
    28 Misc. 2d 144 (N.Y. Sup. Ct. 1955)...........................................................15

*Chadirjian v. Kanian,*
    123 A.D. 2d 596 (2d Dept.1986) ....................................................................12

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.,*
    70 N.Y.2d 383 (N.Y. 1987) ............................................................................12

*Dalow Industries, Inc. v. Jordache Enterprises, Inc.,*
    631 F. Supp. 774 (S.D.N.Y. 1985) ..................................................................5

*Fantis Foods, Inc. v. Standard Importing Co.,*
    49 N.Y.2d 317 (1980)......................................................................................13

*Moscato v. TIE Technologies,*
    No. 04 Civ. 2487, 2005 U.S. Dist. LEXIS 867 (S.D.N.Y. January 20, 2005) .......................13

## STATUTES

9 U.S.C. § 13 ...............................................................................................5, 11

28 U.S.C. §1927 ...............................................................................................18

## OTHER AUTHORITIES

18 Am. Jur. 2d ...............................................................................................14

Fed R. Civ. P 12 (h)...........................................................................................13

ii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
COTY INC.,

                              Plaintiff,

                                                    07 CV 6206 (KMW)
                         – against –
                                                    *(Electronically Filed)*

L'ORÉAL S.A.,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Defendant L'Oréal S.A. ("L'Oréal"), by its counsel, Baker & McKenzie LLP, submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Coty, Inc. ("Coty") filed July 7, 2007 (the "Complaint").

## PRELIMINARY STATEMENT

In 2004 Coty and L'Oréal signed a contract covering L'Oréal's purchase of all of the outstanding stock of two Chinese companies (the "YSK Companies") from Coty. The contract provided for a purchase price and a post-closing purchase price adjustment to be calculated based on the difference in consolidated net worth as between pre-closing and closing balance sheets of the YSK Companies. The contract mandated that any disputes regarding this final payment adjustment be settled by binding arbitration.

A dispute arose regarding an adjustment claimed by Coty in respect of an amount which it had included as an intercompany payable in the YSK Companies' pre-closing balance sheet, but had eliminated from their closing balance sheet in order to increase closing net worth and thereby secure a payment from L'Oréal. The dispute was

submitted to arbitration and the arbitrator ruled in L'Oréal's favor, holding that no payment was due because the entry should have been carried in the closing balance sheet as a reserve.

In a challenge brought by Coty, this Court in a March 2006 Order vacated the award, holding that the contract required the arbitrator to accept the methodology of the pre-closing balance sheet, regardless of whether it was prepared in accordance with US GAAP, as required by the contract, as the unalterable starting point in computing any post-closing purchase price adjustment. The March 2006 Order neither made nor set aside any findings of fact, but instead remanded the matter for further proceedings and fact finding consistent with this holding.

In July 2006 the arbitrator rendered a second award, again in L'Oréal's favor, holding that even accepting the methodology of the pre-closing balance sheet, and accepting the entry as an intercompany payable of the YSK Companies, the entry had been improperly eliminated from the closing balance sheet because no payment had been made by those Companies, and accordingly no post closing adjustment payment was owed by L'Oréal in respect thereof.

Coty challenged this award in a second proceeding, and this Court found that the Arbitrator had acted properly within the scope of its authority and confirmed that arbitral award in an Order dated April 6, 2007. Coty took no appeal from this decision.

This action is the <u>third time</u> Coty has come before this Court seeking the same payment from L'Oréal. Notwithstanding the Arbitrator's ruling and this Court's April 2007 Order confirming that ruling, Coty argues that this Court in March 2007 held that the amount at issue "was indeed an intercompany payable," and that even though this

"payable" by the very allegations of the Complaint was an intercompany payable "owed *by the YSK Companies,*"    *L'Oréal* must pay this amount to Coty because L'Oréal purchased those companies.

This argument is not only a complete distortion and mischaracterization of this Court's March 2006 Order, but it is expressly contradicted by this Court's order of April 2007 confirming the arbitral award.  Specifically, in its April 2007 Order, this Court held that:

- The March 2006 Order "determined *only* that the June 2003 Balance Statement was the unalterable baseline from which adjustments would have to be made."

- The Court's March 2006 Order "expressed no opinion as to the merits of the arbitrator's findings," and "expressed no opinion as to whether the intercompany payable 'should have to be paid.'"

- The claim by Coty that "the intercompany payable 'should have to be paid' begs the question of which entity should have to pay: [L'Oréal] or the YSK Companies."

- And, finally – and critically for purposes of this motion:

   **"The Arbitrator concluded that [Coty] improperly eliminated the intercompany payable, thereby *shifting the burden* from the YSK Companies to [L'Oréal].  [Coty] has failed to carry its heavy burden to show that the Arbitrator's decision is contrary to law."**

   Order of April 6, 2007 at pp. 10-11, annexed as Exhibit C to the Complaint.

By Coty's own Complaint, the only basis upon which it founds its claim for payment from L'Oréal is L'Oréal's purchase of the YSK Companies. Whatever may be the merits of any claim against the YSK Companies as to any "intercompany payable"

(and L'Oréal in no way concedes that there would be any merit to any such claim), as between Coty and L'Oréal there is a contract governing the purchase transaction which clearly and unambiguously sets forth all the obligations as between Coty and L'Oréal with respect thereto, expressly excluding any other agreements or understandings. That contract has been definitively construed, resulting in an arbitral award with respect to post closing payments between Coty and L'Oréal, and that award is final.

While Coty advances supposed principles of quasi contract and tort in an effort to supplant that contract and subvert the arbitrator's decision, neither claims of tort nor quasi-contract can be made when a contract governs the obligations between Coty and L'Oréal. While Coty vaguely argues, "in the alternative," that there are "other remedies" in the contract including duties of good faith and fair dealing, the terms of the contract are clear and the rights as between the parties are clear, L'Oréal was within its rights in insisting that the terms of that contract be followed, and the arbitrator and this Court have upheld those rights.

This Court, in confirming the arbitral award, held that the arbitrator properly concluded within the scope of its authority that Coty had improperly attempted to shift a burden of an alleged intercompany payable purportedly owed by the YSK Companies to L'Oréal. The instant Complaint against L'Oréal, attempting once again to shift that burden, should be summarily dismissed.

Given the clarity of this Court's holdings, and Coty's deliberate disregard of the very language of those holdings, it is reprehensible for Coty to make these twice rejected arguments and once again seek payment from L'Oréal. Accordingly, L'Oréal

4

additionally respectfully requests that this Court award L'Oréal its costs, including attorney's fees, incurred in moving to dismiss the Complaint.

## STATEMENT OF FACTS

After two proceedings, the facts and issues are well known to this Court, but for purposes of this motion can be summarized as follows[1] :

1. On January 23, 2004, Coty and L'Oréal executed a Master Assignment and Transfer Agreement (the "Master Agreement") under which L'Oréal purchased all of the outstanding stock of two Chinese companies (the "YSK Companies") from Coty for $250 million.[2] The purchase was based, *inter alia*, on financial information set forth in a June 2003 Financial Statement (the "June 2003 Balance Sheet") prepared by Coty which Coty represented and warranted was prepared in accordance with US Generally Accepted Accounting Principles ("GAAP") and the YSK Companies' past practices. [Master Agreement §2.07(a)].

2. The Master Agreement provided for a post-closing purchase price adjustment to be based on the difference in consolidated net worth as shown in the June 2003 Balance Sheet and the consolidated net worth as shown in a closing statement (the "Closing Statement"), also required to be prepared in accordance with Coty's past practices and US GAAP. [Master Agreement §§ 1.01(b), 1.05(a, c), 2.07(a)].

---

[1]    In keeping with standards applicable to motions to dismiss, this summary relies on the allegations of the Complaint and exhibits thereto. However, because the July 2006 arbitral award confirmed by this Court operates as a judgment, as final and effective as any other judgment, a copy of the award is annexed hereto, and there are a limited number of references to this Court's docket in the confirmation proceedings for purposes of illustrating certain issues which are now barred by that award's preclusive effect. *See* 9 U.S.C. § 13; *Dalow Industries, Inc. v. Jordache Enterprises, Inc.*, 631 F. Supp. 774 (S.D.N.Y. 1985).

[2]    A copy of the Master Agreement is annexed to the Complaint as Exhibit A, and the "Master Agreement" references which follow are references to the sections of that Agreement as reproduced in that Exhibit.

3.    The Master Agreement had no provision for any other post-closing payments by L'Oréal to Coty in respect of the purchase other than the post-closing purchase price adjustment, and it contained a merger clause stating that it constitutes the complete agreement between the parties with respect to its subject matter, excluding all others except by written modification signed by all parties. [Master Agreement § 9.03]. No such modification exists or has been alleged.[3]

4.    Any disputes with respect to the post-closing purchase price adjustment were to be determined by binding arbitration, with L'Oréal allowed to object to any mathematical errors or to "the Closing Net Worth not having been calculated in accordance with US GAAP (and also in a manner consistent with [Coty's] past practices and the preparation of the [June 2003 Balance Sheet])." [Master Agreement § 1.05(b)(i)].

5.    As further provided in the Master Agreement:

"[T]he sole purpose of the determination of the Closing Net Worth is to adjust the Purchase Price so as to reflect the difference between the consolidated net worth of the [YSK] Companies as of June 30, 2003 and the consolidated net worth of the [YSK] Companies as of the Closing Date and ... *such difference can be measured only if the calculation is done using the same accounting principles, practices, methodologies, and policies used in the preparation of the [June 2003 Balance Sheet]*." [*Id.*; emphasis added].

6.    After the closing, L'Oréal discovered that an entry in the June 2003 Balance Sheet in the amount of RMB 44,810,000 with respect to Chinese consumption taxes, denominated as a long-term intercompany payable, had been eliminated by Coty from the Closing Statement. This reversal had the effect of increasing consolidated net worth, thereby increasing any

---

[3]    To the contrary, L'Oréal has been vigilant in disputing and documenting its complete rejection of Coty's unilateral attempts to alter the terms of the Master Agreement and depart from its obligations thereunder, including not only the bargained-for purchase price adjustment but the representation and warranty of Coty that financial statements be prepared in accordance with generally-accepted accounting principles.

adjustment that would be owed to Coty by L'Oréal.  L'Oréal timely objected to the elimination of this entry and demanded arbitration.  [Order of this Court dated April 6, 2007, annexed as Exhibit C to the Complaint (the "April 2007 Order") at p. 4].

7.    The matter was referred to arbitration, and an award was rendered in January 2005, by KPMG acting as arbitrator ("KPMG" or the "Arbitrator").  KPMG ruled that the entry had been improperly eliminated and, moreover, should have been recorded as a reserve for taxes in order to be consistent with the YSK Companies' past practices and US GAAP.  Coty challenged this determination in a petition to this Court, which in an Order dated March 27, 2006 vacated the award.  [Complaint, Exhibit B (the "March 2006 Order")].

8.    In its March 2006 Order, this Court held that, for purposes of computing the post-closing purchase price adjustment, KPMG was constrained by the above-quoted § 1.05 of the Master Agreement and that KPMG's authority "did not allow it to question the June 2003 Balance Sheet itself, but rather established that Balance Sheet as the unalterable starting point for the calculation of any subsequent changes in the net worth of the YSK Companies." [March 2006 Order at 16].[4]

9.    Because KPMG had based its decision *entirely* on its view that the Closing Statement had to carry the provision as a tax reserve, as opposed to

---

[4]    This Court acknowledged that there could be an internal tension between the requirements that the pre- and post-closing financial statements be consistent with "past practice" and with US GAAP, but noted that, when addressing the parties' dispute in an arbitration under §1.05 regarding the proper treatment of the RMB 44,810,000, the arbitrator "appears to have simply ignored the provision of Section 1.05 (b)(i) requiring the purchase price calculation to be based on [the June 2003 Statement methodology]." (*Id.* at pp. 19-20).

Importantly, it should be noted that outside the context of the arbitration this methodological constraint under § 1.05 on the arbitrator's authority *would have no application*, and the representations and warranties with respect to GAAP given under § 2.07(a) – which Coty deleted from its selective quotation in paragraph 11 of the Complaint – would need to be given full force and effect, including, in particular, in any effort to claim enforcement of a purported debt premised on a balance sheet entry mischaracterized in violation of GAAP.

performing any analysis based upon the characterization of the entry in the June 2003 Balance Sheet as a payable, this Court concluded that it could not address the question of whether KPMG might have reached the same ultimate result based upon a different rationale in compliance with the methodology requirements of § 1.05. This Court therefore vacated the award, rather than modifying it, leaving KPMG free within the specific procedural parameters applicable solely to a § 1.05 arbitration to reach whatever result it found appropriate. [*Id.* at pp. 21-22, 24-25, n. 11].

10.  Importantly, this Court did "not examine the merits of the arbitrator's decision." It expressed "no opinion as to…the merits of KPMG's findings," and this Court expressly noted that it could make no factual findings of its own. [*Id.* at p. 14, n. 6; p. 20, n. 9; p. 25, n. 11].

11.  On remand, KPMG analyzed the matter again, receiving detailed and exhaustive submissions from both parties.[5] Following the procedural constraints imposed by this Court it concluded, in a decision rendered July 27, 2006 (the "July 2006 Arbitral Award," annexed hereto), that regardless of whether the RMB 44,810,000 had been properly designated as an intercompany payable in the June 2005 Balance Sheet, the entry had been improperly eliminated from the Closing Statement and that Coty had no basis to eliminate it given that there had been no payment from the YSK Companies to Coty.[6] Accordingly, the Arbitrator held that Coty was not

---

[5]  The Complaint contains a number of mischaracterizations and distortions of the submissions to the Arbitrator which this memorandum does not address in order to keep the focus on only those matters pertinent to the instant motion. However, L'Oréal in no way concedes that Coty's characterizations are accurate and the actual submissions may be found as Exhibits I through Q to the Fishoff Declaration (April 2007 Order Docket No. 5) and Exhibits I through U to the Jaffre Declaration (April 2007 Order Docket No. 12).

[6]  Although the Master Agreement authorized Coty to settle any intercompany obligation as between Coty and the YSK Companies before or at the closing [Master Agreement § 9.03(b)], the Arbitrator found that there had been no payment made to Coty by the YSK Companies in settlement of the purported payable. July 2006 Arbitral Award at 4.

entitled to a payment from L'Oréal as a purchase price adjustment in respect of the amount. [April 2007 Order at pp. 8-9].[7]

12.    Coty then filed a second petition with this Court to challenge the July 2006 Arbitral Award, arguing that the Arbitrator had relied upon an improper rationale (Coty's mischaracterization of the June 2003 entry in violation of GAAP as a payable rather than a reserve), that L'Oréal had not properly presented an objection to the elimination of the purported payable, and that "this Court, in the March 2006 Order, decided that the RMB 44,810,000 was an intercompany payable and a debt owed to Coty." [*Id.* at p. 6].

13.    This Court rejected Coty's argument that the arbitrator relied upon an improper rationale, holding that the arbitrator had carefully followed the methodological constraints imposed by the Court, accepting the June 2003 entry as an intercompany payable solely for purposes of the post-closing adjustment and concluding there was no basis to eliminate it in calculating the purchase price adjustment.[8] This Court additionally rejected Coty's technical argument that L'Oréal had waived any right to object to the elimination of the entry, holding that L'Oréal's objection was clear and timely. [*Id.* at pp. 9-10].

---

[7]    In its March 2007 Order this Court noted that Coty had argued that an award to L'Oréal would "unjustly enrich" L'Oréal but did not address the argument because of its holding that the Arbitrator's methodology was not in keeping with the limitations imposed by the Purchase Agreement.

    In its submission to the arbitrator on remand Coty made the same argument, contending that "L'Oréal will be unjustly enriched if allowed never to pay the intercompany payable owed to Coty as per the Opening Balance Sheet." (*See* Exhibit N to the Fischoff Declaration, submitted as part of the proceedings leading to this Court's April 2007 Order in No. 06 Civ. 5698, Docket No. 5 [hereinafter March 2007 Order Docket No. 5]). This argument is now merged with, and precluded by, the July 2006 Arbitral Award, barring the Company's claims against L'Oréal of unjust enrichment.

[8]    In this regard, while the Arbitrator noted as a factual matter, and by way of background, its continued view that the characterization in the June 2003 Financial Statement of the amount as an intercompany payable was inappropriate in view of GAAP and the YSK Companies' past practices of carrying the entry as a reserve, this Court found that the Arbitrator clearly rested its award upon the conclusion that Coty had inappropriately eliminated an entry carried as an intercompany payable. *See* April 2007 Order at n. 2; *see also* July 2007 Arbitral Award at p. 3.

14.     Finally, this Court considered Coty's argument that its March 2006 Order supposedly "'decreed' that the disputed RMB 44,810,000 is an intercompany payable and therefore 'should have to be paid.'" [April 2007 Order at p. 10]. This Court rejected this argument, holding as follows:

"The March 2006 Order...determined only that the June 2003 Balance Statement was the unalterable baseline from which adjustments would have to be made. The Court expressed no opinion as to the merits of the Arbitrator's findings. *Thus, the Court expressed no opinion as to whether the intercompany payable 'should have to be paid.'*

"Equally important, the statement [by Coty] that the intercompany payable 'should have to be paid' begs the question as to which entity should have to pay: Respondent [L'Oréal] or the YSK Companies. *The Arbitrator concluded that Petitioner [Coty] improperly eliminated the intercompany payable, thereby shifting the burden from the YSK Companies to Respondent. Petitioner has failed to carry its heavy burden to show that the Arbitrator's decision is contrary to law.*"

April 2007 Order at pp. 10-11 (emphasis added).

15.     The April 2007 Order of this Court has not been appealed.


## ARGUMENT

Coty's latest Complaint alleges that the June 2003 Balance Sheet had "an intercompany payable owed by YSK Shenzhen to Coty," (Complaint ¶ 13). It thereby concedes that the supposed obligation is an obligation allegedly owed to Coty by the YSK Companies, not by L'Oréal. However, the Complaint seeks, once again, to shift the burden of payment of this alleged obligation from the YSK Companies to L'Oréal.

The Complaint points to no factual or legal basis for doing so. The Master Agreement contains no agreement by L'Oréal to assume or discharge any debts of the

YSK Companies, states that there are no agreements or understandings other than as specifically set forth therein, and contains nothing in respect of payables other than an authorization to Coty to cause *the YSK Companies* to settle the payables as between themselves and Coty before or at the closing. Master Agreement, §§ 4.02(b), 9.03. The Arbitrator held, as a factual matter, that the purported payables were not settled between the YSK Companies and Coty, for there had been no payment by the YSK Companies to Coty. April 2007 Order at 8; July 2006 Arbitral Award at 4.

Having no contractual basis for shifting the burden, Coty alleges that, because L'Oréal purchased the YSK Companies with a purported intercompany payable owed by the YSK Companies in the June 2003 Balance Sheet, it would be "inequitable" for L'Oréal not to pay that payable to Coty. Coty argues that this is because a failure to pay by L'Oréal would be "unjust enrichment" or "conversion" or (alternatively) because it would be "breach of contract."

None of these arguments has any merit. The simple fact is that whatever may be the obligations as between the YSK Companies and Coty in respect of the purported payable from the YSK Companies to Coty – and L'Oréal in no way concedes there was any *bona fide* payable and notes that there is not even an allegation that a request for payment was made upon the YSK Companies – there is no legal basis to shift the burden (whatever it may be) from the YSK Companies to L'Oréal. This Court so held in confirming the award and refusing to accept Coty's arguments, and that decision confirming the July 2006 Arbitral Award is final, binding and *res judicata*. 9 U.S.C. § 13.

By the very allegations of the Complaint, the relationship between L'Oréal and Coty in respect of the purchase of all of the outstanding stock of the YSK Companies, the

balance sheets and any post-closing adjustments are governed by the Master Agreement between Coty and L'Oréal. That Agreement expressly provides that there are no understandings or agreements other than what is set forth in that Agreement or agreed to in writing. Master Agreement § 9.03. There are no such other understandings or agreements, *and Coty does not allege in its Complaint that there are any such other agreements or understandings*.

The Master Agreement clearly provides for only one post-closing adjustment as between Coty and L'Oréal founded on the balance sheets, and for only one mechanism to resolve disputes with respect to that adjustment: an arbitration. That adjustment has been made, the arbitration is concluded and confirmed, and all disputes have been resolved.

Coty's three claims for relief, made in a transparent effort to circumvent the preclusive effect of the arbitration, are each, on their face, legally insufficient:

### 1.    *Coty can make no claim against L'Oréal for unjust enrichment.*

Given that there is a valid and enforceable contract governing the question of what monies may be owing as between L'Oréal and Coty, Coty must abide by the terms of that contract; it cannot resort to equitable claims of unjust enrichment in an attempt to circumvent the contract or create an obligation where none exists and where creation of an obligation out of whole cloth has been expressly precluded by a parole evidence clause. *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 383, 388 (N.Y. 1987) (existence of a valid enforceable contract precludes recovery in quasi contract); *Chadirjian v. Kanian*, 123 A.D. 2d 596, 598 (2d Dept.1986) (a party may not recover based on the theory of unjust enrichment where there is a valid express agreement between the parties which

explicitly covers the same subject matter for which relief sounding in quasi contract is sought).

Coty attempts to circumvent this principle of law by alleging that "the contract between the parties does not govern the subject matter at issue – namely, the resolution of the RMB 44,810,000 intercompany payable." (Complaint ¶ 38).[9] However, while the Master Agreement does not cover whether there is a valid intercompany payable between the YSK Companies and Coty or the resolution of an intercompany payable as between Coty and its former subsidiary YSK Companies (other than to require that any payables recorded on balance sheets be done so in accordance with GAAP, and to permit their resolution between Coty and the YSK Companies prior to or at closing, neither of which was done), it most definitely covers any obligations between Coty and L'Oréal which may exist in respect thereof, by providing solely for a post closing purchase price adjustment and barring any other agreement or understanding flowing from the purchase of the companies, save as explicitly provided in the Master Agreement.    Master Agreement § 9.03.  Accordingly, the claim in quasi-contract is barred.[10]

---

[9]    If, indeed, this is true, the provisions of the Master Agreement under which L'Oréal agreed to submit to this Court's jurisdiction (Master Agreement § 9.09) and New York governing law (Master Agreement § 9.08) would not apply.  Accordingly, and in order not be exposed to possible bar by the provisions of Fed R. Civ. P 12 (h), L'Oréal has additionally moved to dismiss the Complaint for lack of personal jurisdiction.  The grounds for this motion are that, absent the provisions of the Master Agreement upon which Coty exclusively relies (*see* Complaint ¶ 9), New York jurisdiction would be plainly improper for an action against a French company, not alleged to be present in or doing business in New York, with respect to alleged debts of a Chinese company relating to Chinese taxes.  *Moscato v. TIE Technologies*, No. 04 Civ. 2487, 2005 U.S. Dist. LEXIS 867 at *7-10 (S.D.N.Y. January 20, 2005) (no personal jurisdiction where no allegation defendant is doing business in New York); *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317 (1980) (plaintiff's New York domicile not enough to confer jurisdiction where alleged conversion occurred abroad).

[10]    Although the claim of unjust enrichment is barred, L'Oréal notes that under any characterization of the entry, L'Oréal, in not making any payment itself to Coty, is simply acting appropriately under the contractual provisions and protections for which it bargained.  If, as L'Oréal would submit, the entry

### 2.    *Coty can make no claim against L'Oréal for conversion.*

Coty also argues that the RMB 44,810,000 "intercompany payable" "constitutes a specifically identifiable fund of money that L'Oréal was under a duty to return to Coty" (Complaint ¶ 41) and that L'Oréal's "refusal to return the RMB 44,810,000 to Coty is an unauthorized exercise of control over Coty's property," constituting conversion. (Complaint ¶¶ 42 et seq.). The problem with this allegation is that, by its own allegations, the Complaint describes the intercompany payable as a payable owed by the YSK Companies. Complaint ¶ 13. Thus, L'Oréal has no property of Coty to convert in this respect.

No explanation is offered as to how that obligation of the YSK Companies, if indeed there is an obligation, has been transmogrified into a general obligation or duty on the part of L'Oréal. The only duty L'Oréal had in respect of that entry was insofar as it might result in an adjustment to the contracted purchase price as per the terms of the Master Agreement. L'Oréal had a contractual right to that adjustment being computed as per the terms of the Master Agreement, and enforcement of that contract right by definition could not give rise to a tort because conversion presupposes lack of legal entitlement. *See* 18 Am. Jur. 2d Conversion § 20 (2004) ("Conversion, being a wrongful and tortious act, cannot originate in the exercise of a legal right, such as … acting in accord with a contractual right."). The Arbitrator has ruled, and this Court has confirmed,

---

was improperly characterized as a receivable and should have been a reserve, L'Oréal bargained for and was entitled to the ongoing financial protection of a reserve required in accordance with US GAAP. If as Coty contends, it was properly characterized as a payable, L'Oréal bargained for and was entitled to have the payable paid by the entity owing the payable (*i.e.*, the YSK Companies) in accordance with the terms and conditions of that payable, whatever they might be, and subject to defenses of that entity whatever they might be, not for the shifting of that burden to L'Oréal.

that Coty's efforts to shift the purported burden of the alleged payable to L'Oréal via the balance sheets and post-closing purchase price adjustment was improper and that L'Oréal was entitled to the credit for that amount, which Coty in effect attempted to convert from L'Oréal into its own property, in the final determination of the post-closing purchase price adjustment. Accordingly, the claim in tort is barred.[11]

### 3. *Coty can make no claim against L'Oréal for breach of contract.*

Coty's third claim for relief asserts, "in the alternative," that because the Master Agreement "incorporated" the June 2003 Balance Sheet, the Master Agreement allegedly "provides that L'Oréal was not to receive the RMB 44,810,000 represented by the payable to Coty." (Complaint ¶ 48). However, the only place in the Master Agreement where the June 2003 Balance Sheet is referenced in connection with any obligations of L'Oreal is in the provisions of § 1.05 for computing the post closing purchase price adjustment, a matter that is already *res judicata* by virtue of the Arbitrator's award.[12]

---

[11]   Indeed, even as between the YSK Companies and Coty, if there were a valid claim for payment of the payable, that claim would be in contract and could not give rise to a tort because a claim to recover damages for conversion cannot be predicated on a mere breach of contract. *See Wolf v. National Council of Young Israel,* 264c A.D.2d 416 (2d Dept. 1999) and cases cited. Moreover, because Coty's claim is not for a chattel, but rather relates to a mere alleged debt or chose in action, no claim of conversion is possible. *See* AM JUR 2d, Conversion, § 8; *Anthracite Capital, Inc. v. MP-555-West Fifth Mezzanine, LLC,* 2005 U.S. Dist. LEXIS 9179 (S.D.N.Y. May 18, 2005) (security interest is intangible and is not subject to conversion claim); *Calvada, Inc. v. Fidelity & Deposit Co.,* 28 Misc. 2d 144, 147 (N.Y. Sup. Ct. 1955) (action of conversion does not lie to enforce mere obligation to pay money).

[12]   The only other place these financial statements are referenced are in § 2.07 where *Coty* represents and warrants that the June 2003 Balance Sheets were prepared in accordance with US GAAP (a provision which to the extent it is independent of § 1.05 would undercut Coty's claims, and which is an obligation of Coty, not of L'Oréal) and the limitations on indemnification obligations of Coty in §§ 7.03 (Limitations on Indemnification) and 8.03 (Tax Indemnification) (provisions not applicable to the instant proceeding,  although L'Oréal has notified Coty of a claim it may have for indemnification in respect of Chinese consumption and other taxes which will be governed by these provisions in the event the limitations are exceeded.)

Coty's "breach of contract" claim also vaguely asserts that the "agreement provides for other remedies" in addition to the purchase price adjustment (Complaint ¶ 48) and alleges supposed breaches of "the duty of good faith and fair dealing inherent in all contracts" (*Id.*, ¶ 51). However, there is no citation to any other pertinent provisions or remedies, because there are none. And the Complaint offers no explanation as to how simple application of the bargained-for purchase price adjustment could constitute a breach of any duty of good faith or fair dealing, nor can it because enforcement of L'Oréal's contractual rights as upheld by an arbitral award confirmed by a Court by definition cannot constitute a breach of contract or of any implied duty of fair dealing or good faith.

As L'Oréal noted to this Court in the prior proceeding which resulted in this Court's confirmation of the July 2006 arbitral award, L'Oréal did not assume any liabilities of the YSK Companies under the Master Agreement. L'Oréal re-iterates that there has been no determination as a factual matter that there were any such liabilities in respect of the purported intercompany payable at issue in the present case.[13] But whatever those liabilities may be they would be liabilities

---

[13]  In this regard, in addition to this Court's statement that the March 2007 Order constituted no such determination (*see* April 2007 Order at pp.10-11), L'Oréal notes that:

    (1) Contrary to Coty's allegation that the June 2003 Balance Sheet was "the unalterable baseline for the entire transaction" (Complaint ¶ 21), this Court held and § 1.05 of the Master Agreement provided only that the June 2003 Balance Sheet characterization had to be accepted as the unalterable starting point solely for the calculation of any changes in net worth in an arbitration.

    (2) The Master Agreement provided (in language Coty deletes from its selective quotation of § 2.07 in ¶ 11 of the Complaint) that Coty warranted that the June 2003 Balance Sheet was prepared in accordance with US GAAP.

    (3) The Arbitrator, while constrained to accept the June 2003 Financial Statements' characterization of the entry as a payable for purposes of the arbitration, concluded as a factual matter, and by way of background, that this was not in accordance with GAAP. July 2007 Arbitral Award at p. 3-4.

    (4) Neither the Master Agreement, nor the arbitration is in any way binding on the YSK Companies, who were parties to neither.

of the YSK Companies, not L'Oréal; and the Arbitrator held and this Court has confirmed that there was no basis for shifting this burden from those companies to L'Oréal. Accordingly, the claim for "breach of contract" is barred.

Coty has sought through the improper manipulation of balance sheets to subvert the clear provisions of an agreement between the parties, and to transfer liability to L'Oréal for a purported debt of a Chinese company that L'Oréal never assumed. Coty continues to seek to hold L'Oréal, rather than the Chinese company (which is a separate legal entity), liable in the face of a binding arbitral decision holding that Coty's attempt to shift such a burden was improper.

Coty advances, yet again, legal theories that are patently untenable, and arguments that were dispositively rejected. It relies on studied distortions of this Court's opinions, which were carefully crafted to respect the contractual obligations of the parties and the scope of arbitral fact finding discretion and to afford the high degree of deference to which an arbitral decision is entitled. *See* April 2007 Order at pp. 6-7. Indeed, Coty has the temerity to argue for burden shifting despite such shifting being specifically rejected by the very language of this Court's Order confirming the July 2006 Arbitral Award. *Id.*, at pp. 10-11.

This is the third time these matters have been before this Court, requiring L'Oréal to retain counsel, yet again, at not insignificant expense to address, once again, arguments previously advanced and previously rejected. If Coty, which has never even requested payment of the purported payable from the YSK Companies, wishes to seek recovery from the Chinese companies on whose books it contrived to create a purported payable –

meritless though such a claim may be – it can do so in an appropriate forum with an appropriate claim where the actual purported debtor can raise all appropriate defenses. But the specious claims against L'Oréal raised in this new Complaint are wholly devoid of merit and should never have been brought.

A court has discretion to award attorney's fees "where the losing party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)); *see also* 28 U.S.C. §1927. The instant Complaint filed by Coty presents just such a case. *C.f., Jamaica Commodity Trading Company Limited v. Connell Rice & Sugar Company, Inc., et al.*, Index No. 87 Civ. 6369 (JMC) 1991 U.S. Dist. LEXIS 8976 (S.D.N.Y. 1991). L'Oréal accordingly requests that this matter not only be dismissed, but that it be awarded its fees and costs.

## CONCLUSION

WHEREFORE, Defendant L'Oréal S.A. respectfully requests that this Court dismiss the Complaint, with prejudice, additionally awarding L'Oréal its reasonable attorney's fees and costs, together with such other and further relief as it may deem appropriate.

Dated:   New York, New York
         August 30, 2007

                                        BAKER & McKENZIE LLP

                          By:    _____
                                 Charles H. Critchlow (CC–4905)
                                 James Bailey (JB-0677)
                                 1114 Avenue of the Americas
                                 New York, New York 10036
                                 (212) 626-4100
                                 *Attorneys for Defendant L'Oréal S.A.*

18

# ANNEX

# July 2006 Arbitral Award



KPMG LLP
1601 Market Street
Philadelphia, PA 19103-2499

Telephone  267 256 7000
Fax        267 256 7200
Internet    www.us.kpmg.com

July 6, 2006

Steven Danatos, Senior Vice President
Coty Inc.
1325 Avenue of the Americas
New York, NY 10019

Yann Jaffré, Director of Financial Structures
L'Oréal
41 rue Martre
92110 Clichy – France

**Re:**     **Coty Inc. and L'Oréal SA Purchase Price Dispute**

Messrs. Danatos and Jaffré:

KPMG LLP ("KPMG") was engaged to serve as the "Independent Auditor" (the "Independent Auditor") pursuant to Section 1.05 (b) (ii) of the Master Assignment and Transfer Agreement between Coty Inc. ("Coty") and L'Oréal SA ("L'Oréal"), dated as of January 23, 2004, (the "Master Agreement") to resolve the disputed items identified, in accordance with the dispute resolution procedures described in Section 1.05 (b) (ii) of the Master Agreement. The purchase price dispute between L'Oréal and Coty relates to the transfer of 100% of the registered share capital of Coty YSK Shanghai and YSK Shenzen (the "Companies") to L'Oréal.

On January 20, 2005 KPMG issued a determination in an impartial manner based on inquiry, investigation and other procedures, as KPMG deemed necessary and what KPMG believed to be in accordance with Section 1.05 (a) of the Master Agreement. It is important to note that KPMG reviewed Section 1.05 (b) (i) as part of KPMG's analysis. Section 1.05 (b) (i) of the Master Agreement states the following:

> "Any Notice of Objection shall specify in reasonable detail the basis for the objections set forth therein and shall include only objections based on (A) mathematical errors in the computation of the Closing Net Worth or (B) the Closing Net Worth not having been calculated in accordance with US GAAP (and also in a manner consistent with Seller's past practices and the preparation of the Financial Statements)…Seller and Buyer acknowledge that (1) the sole purpose of the determination of the Closing Net Worth is to adjust the Purchase Price so as to reflect the difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date and (2) such difference can be measured only if the calculation is done using the same accounting principles, practices, methodologies, and policies used in the preparation of the Financial Statements."

Philadelphia Office
100 Celebrating years
1905-2005

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative.



Messrs. Danatos and Jaffré
July 6, 2006
Page 2

Below is the overall purchase price adjustment schedule which was included in KPMG's January 20, 2005 report. The net effect of all adjustments resulted in an amount of $1,912,000 to be paid by Coty to L'Oréal.

| | L'Oréal's Position | Coty's Position | Final Determination |
|---|---|---|---|
| *Unit: 1 = 1 000 RMB – Exchange rate at the Closing Date: 1 USD = 8.2773)* | | | |
| **Consolidated Net Assets at the Closing Date** | **188,928** | **188,928** | **188,928** |
| | | | |
| Carve-out of Adidas Inventory | (13,209) | (13,209) | (13,209) |
| Settlement of Intercompany Payable (A) | (44,810) | - | (44,810) |
| Reversal of Accrual for Enterprise Income Tax (B) | (4,708) | - | (4,708) |
| Unrealized profit & Inventory | (1,803) | (1,803) | (1,803) |
| Under-provided staff welfare payable (C) | (4,329) | (1,848) | (4,329) |
| DTT adjustment related to accrual of year-end bonus | (125) | (125) | (125) |
| Accruals of retention bonus | (28) | (28) | (28) |
| Insufficient provisions for marketing, etc. expenses (D) | (5,004) | - | |
| Reversal of overaccruals of Discounts, Markdowns, AD&P and Sales Returns (E) | - | 36,700 | |
| Assessment of the deferred tax assets/liabilities | - | - | 1,717 |
| **Total adjustments Related to Disputed Items** | **(74,016)** | **19,687** | **(67,295)** |
| | | | |
| **Adjusted Consolidated Net Assets at the Closing Date** | **114,912** | **208,615** | **121,633** |
| | | | |
| **Consolidated Net Assets at June 30, 2003** | **137,463** | **137,463** | **137,463** |
| | | | |
| **Purchase price adjustment in K RMB:** | **(22,551)** | **71,152** | **(15,830)** |
| | | | |
| ***Purchase price adjustment in K USD:*** | ***(2,724)*** | ***8,596*** | ***(1,912)*** |



Messrs. Danatos and Jaffré
July 6, 2006
Page 3

On April 15, 2005 Coty filed a petition with the United States District Court, Southern District of New York, to modify or vacate the arbitration award determined by KPMG relative to the treatment of the RMB 44,810,000 on the grounds that:

> "the arbitrator, KPMG exceeded its authority by issuing an award that effectively changed the accounting of the opening balance sheet"

On May 27, 2005 L'Oreal filed a cross-petition for an order to confirm the arbitration award relative to this matter. On March 27, 2006, United States District Judge Kimba M. Wood granted Coty's petition to modify or vacate the arbitration award relative to the RMB 44,810,000 and denied L'Oreal's cross-petition to confirm the arbitration award relative to this item.

In response to the Judge's ruling, KPMG was asked to re-examine its determination relative to the treatment of the RMB 44,810,000. L'Oreal and Coty prepared various documents for KPMG's consideration as part of the review:

- Coty and L'Oreal submissions dated June 2, 2006
- Coty and L'Oreal responses dated June 9, 2006
- Coty and L'Oreal final comments dated June 16, 2006

KPMG has carefully reviewed its initial determination issued on January 20, 2005, Judge Wood's ruling dated March 27, 2006 and all of the information submitted by the parties, including the additional submissions prepared by Coty and L'Oreal. KPMG has determined the following relative to the treatment of the RMB 44,810,000:

- There was no intent on the part of KPMG to exceed its authority as arbitrator as stipulated in the Master Agreement. KPMG is committed to honor Judge Wood's March 27, 2006 ruling. KPMG is mindful of the Court's ruling and respects the fact that KPMG is bound by the mechanics of the Master Agreement. As the Court stated on page 16 of its opinion, "the Master Agreement . . . established that [June 30, 2003] Balance Sheet as an unalterable starting point for the calculation of any subsequent changes". Thus, KPMG's determination is not based on KPMG's attempt to "restate" or make changes to the June 30, 2003 balance sheet. However, it is KPMG's view that it is important to set out the background below, as it is relevant to this disputed issue.

- As a factual matter, and by way of background, based on the information submitted by the parties (much of which is undisputed) it is KPMG's view that Coty inappropriately characterized the RMB 44,810,000 item as an intercompany payable on the June 30, 2003 balance sheet. Based on the information submitted to KPMG, the reserve for Chinese consumption tax was first established for the fiscal year ending June 30, 1998. The reserve balance was adjusted through June 2001 when it reached the amount of RMB 44,810,000 and remained on the Companies balance sheet until April 2003. Also, based on the information provided to KPMG, it appears that the consumption tax accrual was in accordance with GAAP, and in particular FAS 5.

  KPMG understands that in April 2003 Coty removed this consumption tax accrual from the Companies' balance sheet and replaced it with an entry (for the exact same RMB/dollar amount) labeled as an intercompany payable due to Coty. Based on the information provided by the parties, it is KPMG's view that Coty did not have a basis under FAS 5 to eliminate the



accrual from the Companies books for the Chinese consumption tax. KPMG has not seen evidence in the parties' submissions that would support the claim that it was appropriate under GAAP to eliminate the accrual for Chinese taxes. It is KPMG's view that in accordance with GAAP (and the Companies' "past practice" from at least 1998 to April 2003) the amount should have been included as a tax reserve on the June 30, 2003 Financial Statements and the May 12, 2004 Closing Statement of Consolidated Net Worth.

- Based on the information provided by the parties, it appears that in April 2004, prior to the Closing Date, Coty directed the Companies to record an entry which completely eliminated (on the Companies' books) the RMB 44,810,000 intercompany payable due to Coty. KPMG believes that it is undisputed that at this time, no money or other assets moved from the Companies to Coty with regard to the elimination of this intercompany payable.

- KPMG continues to believe that as a result of Coty's treatment of the tax accrual and the intercompany payable, L'Oreal should be entitled to a purchase price adjustment under the Master Agreement. In general, the payment of cash to eliminate an intercompany payable would not impact the Consolidated Net Worth of the Companies, because the payment of cash to settle an outstanding account payable would result in a simultaneous debit (reduction) to the payable account and a credit (also a reduction) to the cash asset account, thus having a null effect on the Consolidated Net Worth (because the company's assets and liabilities are reduced by the same amount).

- Based on the information provided by the parties, between June 30, 2003 and the May 2004 Closing Date, the intercompany payable related to the RMB 44,810,000 was not accounted for in a manner consistent with GAAP or in a manner consistent with the above treatment. In April 2004, Coty reversed the RMB 44,810,000 out of the intercompany payable account and into income – but without any simultaneous payment of cash or other assets to Coty. The impact of this entry (and the elimination of the account payable to Coty) caused an artificial increase in the Consolidated Net Worth of the Companies between June 30, 2003 and the Closing Date.

- KPMG has seen no evidence to support the reversal into income of the RMB 44,810,000 amount included in the June 30, 2003 balance sheet as an intercompany payable amount – especially because the reversal of the intercompany payable was not accompanied by any actual payment by the Companies to Coty.

- In KPMG's view, because the intercompany payable was reversed into income in April 2004, and was not accompanied by any actual payment by the Companies to Coty, and because the intercompany payable was not reflected on the Closing Statement of Consolidated Net Worth, the Closing Net Worth was not calculated in accordance with GAAP and also was not prepared in a manner consistent with past practices. To the contrary, it appears that the effect of Coty's actions with respect to this intercompany payable was to artificially increase the net worth of the Companies by RMB 44,810,000 between June 30, 2003 and the Closing Date. In actuality, the net worth of the Companies on the Closing Date was RMB 44,810,000 less than the net worth reflected on the Closing Date Statement of Net Worth.



Messrs. Danatos and Jaffré
July 6, 2006
Page 5

- In particular, it is KPMG's view, that the Closing Net Worth was not calculated in accordance with US GAAP and overstated the Companies' net worth by RMB 44,810,000 – because the practical effect of Coty's book-keeping entries was to eliminate a liability for that amount – even though, in reality, on the Closing Date, the Companies continued to have an exposure to the Chinese taxing authorities for consumption tax.

- Because the Closing Net Worth was not calculated in accordance with US GAAP (and also in a manner consistent with Coty's past practices and the preparation of the June 30, 2003 Financial Statements), it is KPMG's determination that the RMB 44,810,000 should be included in order to appropriately calculate the Consolidated Net Worth of the Companies at the Closing Date.

- In particular, KPMG understands that Section 1.05(b) of the Master Agreement provides that:

> "Seller and Buyer acknowledge that (1) the sole purpose of the determination of the Closing Net Worth is to adjust the Purchase Price so as to reflect the difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date and (2) such difference can be measured only if the calculation is done using the same accounting principles, practices, methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements."

KPMG noted the Section 2.07 of the Master Agreement states the following:

> "…sets forth the unaudited adjusted consolidated balance sheet of the Companies as of June 30, 2003 (the "Balance Sheet") and the unaudited adjusted consolidated income statement of the Companies for the fiscal years ended June 30, 2003, 2002 and 2001 (collectively with the Balance Sheet, the "Financial Statements"). The Financial Statements have been prepared in conformity with generally accepted accounting principles in the United States ("US GAAP") (and also in a manner consistent with Seller's past practices), except for the absence of footnotes and other presentation items, and fairly present in all material respects the consolidated financial condition, results of operations and stockholders' equity of the Companies at or for the respective periods then ended…

As stated above, based on the information provided by the parties KPMG believes that the actions taken by Coty with respect to the intercompany account payable between June 30, 2003 and the Closing Date in May 2004 caused a change in the Companies' Net Worth. Thus, in the words of clause (1) quoted above from the Master Agreement, there was a "difference between the Consolidated Net Worth of the Companies as of June 30, 2003 and the Consolidated Net Worth of the Companies as of the Closing Date." Furthermore, in the words of clause (2) quoted above, KPMG believes that the difference between the net worth on June 30, 2003 and the net worth on the Closing Date in May 2004, relating to the treatment of the intercompany payable for RMB 44,810,000, can be measured "using the same accounting principles, practices, methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements." Based on the information provided by the parties, on June 30, 2003, the Financial Statements contained an intercompany account payable of RMB 44,810,000. The parties have not identified any "accounting principles, practices,



Messrs. Danatos and Jaffré
July 6, 2006
Page 6

methodologies, and policies used in the preparation of the [June 30, 2003] Financial Statements" which would have allowed Coty, in April 2004, to eliminate the intercompany payable from the Companies' books and records in connection with a "transaction" where the intercompany payable was not actually paid at the time (or ever). Thus, "using the same accounting principles, practices, methodologies, and policies used in the preparation of the June 30, 2003 Financial Statements," it is KPMG's view that Coty's treatment of the RMB 44,810,000 intercompany payable artificially inflated the net worth of the Companies on the Closing Date; therefore, L'Oreal is entitled to a purchase price adjustment in its favor in the amount of RMB 44,810,000.

The net effect of all purchase price adjustments results in an amount of $1,912,000 to be paid by Coty to L'Oréal.

****************************

KPMG's consulting services were performed in accordance with the American Institute of Certified Public Accountants ("the AICPA") Statement on Standards for Consulting Services and do not constitute an engagement to provide audit, compilation, review, or attest services as described in the pronouncements on professional standards issued by the AICPA.

This report may be used by Coty and L'Oréal only in the instant matter. This report may not be disclosed, copied, published, or used, in whole or in part, without the prior written permission of KPMG, except as ordered by legal process or court of competent jurisdiction. Should you need further assistance, please do not hesitate to call me (267) 256-1839 or Dana McFerran (267) 256-2646.

Very truly yours,

KPMG LLP

*Ronald P Forster*

Ronald P. Forster
Partner