UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

| | | |
|---|---|---|
| COTY INC., | : | |
| | : | 07 Civ. 6206 (KMW) |
| Plaintiff, | : | |
| | : | (*Electronically Filed*) |
| -against- | : | |
| | : | |
| L'OREAL S.A., | : | |
| | : | |
| Defendant. | : | |

-----------------------------------------------------x

### PLAINTIFFS'S MEMORANDUM OF LAW IN OPPOSITION <u>TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

SCHINDLER COHEN & HOCHMAN LLP
Steven R. Schindler (SS 3511)
Jonathan L. Hochman (JH 7072)
Daniel E. Shaw (DS 8129)
100 Wall Street, 15th Floor
New York, New York  10005
(212) 277-6300

*Attorneys for Plaintiff Coty Inc.*

{00034354}

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT .............................................................................................................................. 3

I.  The Court Has Personal Jurisdiction Over L'Oréal Pursuant To
    The Master's Agreement .................................................................................................. 4

II.  Coty's Action Is Not Precluded By Any Of This Court's Or
    The Arbitrator's Previous Decisions ............................................................................... 5

III.  Coty Is Not Precluded From Asserting A Claim For Unjust Enrichment ......................... 7

IV.  Coty's Claim For Conversion Is Properly Pleaded Where L'Oréal
    Has The Authority To Direct Payment Of The Funds Rightfully
    Belonging To Coty ........................................................................................................... 10

V.  Coty's Claim For Breach Of The Duty Of Good Faith And Fair Dealing
    Survives Because L'Oréal's Act Thwarts The Overall Purpose Of
    The Master Agreement ..................................................................................................... 12

CONCLUSION ............................................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
773 N.E.2d 496 (N.Y. 2002)...................................................................................... 12

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)................................................................................... 3, 4

*Dalow Industries, Inc. v. Jordache Enterprises, Inc.*,
631 F. Supp. 774 (S.D.N.Y. 1985)............................................................................. 6

*Decker, Decker & Assocs., Inc. v. Assoc. of Nat'l Advertisers, Inc.*,
839 N.Y.S.2d 432 (Table), 2007 WL 1053881 (N.Y. Sup. Ct. Apr. 10, 2007)............................ 8

*EBC I, Inc. v. Goldman Sachs & Co.*,
7 A.D.3d 418 (1st Dept. 2004)................................................................... 8, 9, 10, 12

*Forschner Group, Inc. v. B-Line A.G.*,
943 F. Supp. 287 (S.D.N.Y. 1996)............................................................................. 5

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)................................................................................... 4

*Hoffman v. Unterberg*,
9 A.D.3d 386 (2nd Dept. 2004) ............................................................................... 11

*IIG Capital LLC v. Archipelago, L.L.C.*,
36 A.D.3d 401 (1st Dept. 2007)................................................................................ 8

*Labajo v. Best Buy Stores, L.P.*,
478 F. Supp. 2d 523 (S.D.N.Y. 2007)......................................................................... 8

*Manhattan Motorcars, Inc. v. Automobili Lamborghini,
S.p.A.*, -- F.R.D. --, 07 Civ. 978 (SAS), 2007 WL 1988144 (S.D.N.Y. July 9, 2007)............... 7, 8

*Meese v. Miller*,
79 A.D.2d 237 (4th Dept. 1981) ............................................................................. 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
COTY INC.,                                    :
                                              :        07 Civ. 6206 (KMW)
                          Plaintiff,          :
                                              :
          -against-                           :
                                              :
L'ORÉAL S.A.,                                 :
                                              :
                          Defendant.          :
-------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff Coty Inc. ("Coty"), by its attorneys, Schindler Cohen & Hochman LLP, submits

this Memorandum of Law in Opposition to the Motion of Defendant L'Oréal S.A.("L'Oréal") to

Dismiss the Complaint (the "Complaint").

**PRELIMINARY STATEMENT**

This action presents claims against L'Oréal for unjust enrichment, conversion, and breach

of contract, all related to a transaction in which L'Oréal purchased two of Coty's wholly-owned

Chinese subsidiaries.  Through that transaction, L'Oréal wrongly received more value than the

parties contemplated in the negotiation of purchase price and the related underlying business (or

net assets) -- RMB 44,810,000 or approximately $5.9 million more -- due to an unresolved

intercompany payable owed to Coty which still remains on the books.  These funds rightfully

belong to Coty.  By not paying, or directing the subsidiaries that are now wholly-owned by

L'Oréal to pay, L'Oréal has perpetuated this wrongdoing to Coty's detriment.

At the close of the transaction, the parties engaged KPMG to act as an arbitrator – a

position which simply required, and only allowed, KPMG the mechanical function of performing

the post-closing purchase price adjustment.  KPMG had extremely narrow authority and could not have decided the issues currently before this Court.  Nothing in KPMG's July 6, 2006 Arbitral Award (the "July 2006 Arbitral Award") is preclusive of Coty's claims.  In the course of that arbitration, however, L'Oréal acknowledged the existence of the unresolved RMB 44,810,000 intercompany payable and represented to KPMG that it had the authority to direct its subsidiaries to pay the payable.  This is a position directly opposite what L'Oréal now asserts before this Court, and L'Oréal should be required to pay or so direct its subsidiaries to pay Coty the RMB 44,810,000 that it is rightfully owed.

None of L'Oréal's arguments suffice to dismiss Coty's claims.  First, as discussed above, there is no preclusive effect that can be attributed to KPMG's July 2006 Arbitral Award, or to this Court's 2007 Order (defined in the Complaint) confirming that award.  Second, this Court plainly has personal jurisdiction over L'Oréal based on the very broad language of the agreement between the parties.  Third, Coty has stated a claim for unjust enrichment that is not precluded by the existence of a written agreement between the parties, because that agreement does not govern the subject matter of Coty's claim.  Fourth, Coty's claim for conversion is properly pleaded because L'Oréal has the authority to direct payment of , and is thus in control of, the funds rightfully belonging to Coty.  Fifth, Coty's claim for breach of contract, pleaded in the alternative, survives because L'Oréal's act thwarts the overall purpose of the agreement between the parties.  Finally, L'Oréal's motion is based in large part on facts not alleged in the Complaint.  Those facts and the arguments based on them should not be considered by this Court.

Coty has stated claims for unjust enrichment, conversion, and breach of contract.  This Court should deny L'Oréal's motion to dismiss in its entirety.

## STATEMENT OF FACTS

This action stems from the acquisition of two of Coty's Chinese subsidiaries by L'Oréal. When L'Oréal agreed to purchase the YSK Companies (as defined in the Complaint) from Coty, the balance sheet of the YSK Companies included an intercompany payable to Coty in the amount of RMB 44,810,000, or approximately $5.9 million.  (*See* Complaint, ¶ 1.)

In order to receive payment on that intercompany payable, Coty sought to reverse the RMB 44,810,000 intercompany payable into income before the sale of the YSK Companies closed, and then to employ the post-closing purchase price adjustment mechanism to realize the value of the RMB 44,810,000.  (*See* Complaint, ¶ 2.)

Despite the fact that L'Oréal had no objection to Coty's resolution of other intercompany payables in this manner, L'Oréal objected to the resolution of the RMB 44,810,000 intercompany payable in this fashion.  Moreover, L'Oréal has refused to allow the RMB 44,810,000 intercompany payable to be settled at all, with the result being that it still sits on the books of the YSK Companies.  (*See* Complaint, ¶ 3.)

As long as that RMB 44,810,000 remains in the YSK Companies' coffers, L'Oréal has garnered a significant windfall.  Simply put, if the intercompany payable is not paid to Coty, then L'Oréal has received the YSK Companies ***and*** an additional RMB 44,810,000 of extra value which was not contemplated by the parties' bargain.  (*See* Complaint, ¶ 4.)

## ARGUMENT

On a motion to dismiss, pursuant to Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (reversing district court's dismissal of claims pursuant to Rule 12(b)(6)).  "Dismissal is

inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."  *Id.*, quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).  "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (reversing district court's dismissal of complaint).

L'Oréal has failed to demonstrate grounds to dismiss Coty's complaint.  First, this Court has personal jurisdiction over L'Oréal pursuant to the broad language of the Master Agreement in which the parties contractually agreed to submit to the jurisdiction of this Court for any type of claim in connection with the Master Agreement  or disputes relating thereto.  Second, neither KPMG's narrow arbitration award, nor the decision of this Court confirming it, are preclusive of Coty's claim.  Third, the existence of the Master Agreement does not, in this case, preclude the assertion of an unjust enrichment claim, because the Master Agreement does not govern the unjust enrichment of  L'Oréal through the deliberate non-payment of an intercompany payable owed to Coty.  Fourth, Coty's conversion claim is properly pleaded because L'Oréal has the authority to direct payment of the intercompany payable by the YSK Companies, its wholly-owned subsidiaries.  Finally, by refusing to pay Coty the outstanding intercompany payable – a settlement not covered by the purchase price adjustment mechanism – L'Oréal has breached the duty of good faith and fair dealing present in the Master Agreement.

## I.    The Court Has Personal Jurisdiction Over L'Oréal Pursuant To The Master Agreement

L'Oréal's argument that this Court lacks personal jurisdiction is simply unavailing in the face of the Master Agreement's clear and broad language:

> Each party irrevocably agrees that any legal action, suit or proceeding against either of them with respect to its obligations or liability under or arising out of or in connection with this Agreement or the transactions contemplated by this Agreement or disputes relating hereto (whether for breach of contract, tortious conduct or otherwise) may be brought only in the United States District Court for the Southern District of New York or, if such court does not have jurisdiction, the state courts of New York located within New York County, and irrevocably accepts and submits to the exclusive jurisdiction and venue of the aforesaid courts *in personam*, with respect to any such action, suit or proceeding.

(Master Agreement, § 9.09 (original emphasis).)  On the basis of this language, L'Oréal has already irrevocably submitted to this Court's jurisdiction for a case such as this that arises "in connection with" the Master Agreement or is a dispute "related" to the transactions contemplated by the Master Agreement.  *Forschner Group, Inc. v. B-Line A.G.*, 943 F. Supp. 287, 291 (S.D.N.Y. 1996) (finding personal jurisdiction where the parties agreed to a contractual forum selection clause).  Coty's claims clearly are related to the transaction contemplated in the Master Agreement, and therefore, to the extent L'Oréal's motion to dismiss is based on a purported lack of personal jurisdiction, it should be denied.

## II.    Coty's Action Is Not Precluded By Any Of This Court's Or The Arbitrator's Previous Decisions

Coty's claims are not precluded by the existence of any prior decision from this Court or KPMG, as arbitrator.  This Court's own 2007 Order expressly opened the door for this action.  After stating that the Court had previously, in its 2006 Order, expressed no opinion as to whether the intercompany payable should have to be paid, the Court went on to say that "the statement that the intercompany payable 'should have to be paid' begs the question as to which entity should have to pay:  [L'Oréal] or the YSK Companies."  (2007 Order, p. 10-11.)  Coty now

seeks to litigate that undecided issue through this action, and it is clearly not precluded from doing so by this Court's prior orders.

Nor does the July 2006 arbitral award issued by KPMG preclude Coty's claims. The Master Agreement did not refer all disputes to arbitration. To the contrary, the Master Agreement contemplated that all but certain mechanical determinations for the post-closing purchase price adjustment,[1] should be litigated. (See Master Agreement, § 9.09.) Rather, the KPMG arbitration was a limited exercise that was bounded by a narrow scope of arbitral authority which, contractually and in practice, only permitted the arbitrator to perform the post-closing purchase price adjustment – a simple calculation necessary for the closure of the transaction contemplated by the Master Agreement. This was not a wide-ranging arbitration in which the arbitrator decided, or even had the authority to decide, a host of legal and factual issues. The July 2006 Arbitral Award was upheld by this Court in deference to the law which favors arbitral awards (*see* 2007 Order at 6, quoting *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005)), but it did not do more than determine that the arbitrator's decision was made within the proper scope of its authority. *See* 2007 Order at 9.

Further, the only case cited by L'Oréal, in a footnote, to support this preclusion argument is completely inapposite and easily distinguished. *Dalow Industries, Inc. v. Jordache Enterprises, Inc.*, 631 F. Supp. 774 (S.D.N.Y. 1985), stands for the proposition that a confirmed arbitral award can have preclusive effect. But the award in the *Dalow* case appears to have been a far more wide-ranging award, and that the arbitrator had the authority to decide all claims by

---

[1]     Section 1.05 of the Master Agreement sets forth the post-closing purchase price adjustment mechanism, and in that context only, allows for arbitration of those limited issues by KPMG: "If Buyer and Seller are unable to resolve all such objections within such period, the matters remaining in dispute shall be submitted to KPMG…." (Master Agreement, § 1.05(ii).)

the parties. That is not the case here. KPMG had a narrowly cabined authority that would have

been too narrow to even make a determination on the claims Coty now asserts.[2]

    Coty's claims are not precluded by either this Court's or the arbitrator's decisions. To the

extent that L'Oréal's motion is premised on claim preclusion, it should be denied.

**III.    <u>Coty Is Not Precluded From Asserting A Claim For Unjust Enrichment</u>**

    Coty may recover on a claim for unjust enrichment if (1) L'Oréal was benefited; (2) at

Coty's expense; and (3) that equity and good conscience require restitution. *See Manhattan*

*Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, -- F.R.D. --, 07 Civ. 978 (SAS), 2007 WL

1988144, at *5 (S.D.N.Y. July 9, 2007). All three of these elements are alleged in the

Complaint. The existence of the Master Agreement does not, as L'Oréal argues (see L'Oréal

Mem. of Law at 12), preclude Coty's claim for unjust enrichment. New York law is clear that

the existence of a written agreement will preclude recovery for unjust enrichment *only if* the

subject matter of the unjust enrichment claim is governed by the written agreement.[3] That is not

the case here. The subject of Coty's unjust enrichment claim is not governed by the Master

Agreement, so Coty must be allowed to plead its unjust enrichment claim.

    New York law permits alternative pleading of unjust enrichment or quasi-contract claims

when the existence of a written contract, insofar as it relates to the subject matter of the unjust

enrichment claim, is unclear. While it may ordinarily be the case that the existence of a written

agreement precludes recovery in quasi contract for events arising out of the same subject matter,

"this rule only applies when the existence of a contract governing the transaction in question is

---

[2]    L'Oréal's argument that Coty raised the issue of unjust enrichment to the arbitrator such that it is now precluded from arguing it here is unavailing. The issue of whether L'Oréal has been unjustly enriched is, and has always been, outside the narrow scope of KPMG's arbitral authority. KPMG did not, and more importantly, could not, have rendered a decision on that issue, and the July 2006 Arbitral Award could not have any preclusive effect on Coty's unjust enrichment claim.

[3]    Pursuant to section 9.08 of the Master Agreement, the parties have agreed that the law of the State of New York shall govern.

undisputed." *Manhattan Motorcars, Inc.* 2007 WL 1988144, at *5 (refusing to dismiss plaintiff's claim for unjust enrichment where the parties have a bona fide dispute as to the existence of an enforceable contract governing the subject of plaintiff's unjust enrichment claim). "[W]here there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." *IIG Capital LLC v. Archipelago, L.L.C.*, 36 A.D.3d 401, 405 (1st Dept. 2007) (reinstating unjust enrichment claim); *accord Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (allowing plaintiff to pursue unjust enrichment claim in the alternative and holding that, "[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."); *Decker, Decker & Assocs., Inc. v. Assoc. of Nat'l Advertisers, Inc.*, 839 N.Y.S.2d 432 (Table), 2007 WL 1053881, at *7 (N.Y. Sup. Ct. Apr. 10, 2007) (refusing to dismiss unjust enrichment claim where there are issues of fact as to whether the agreement between the parties conclusively governs the subject of the unjust enrichment claim).

Moreover, New York law allows a plaintiff to pursue an unjust enrichment claim despite the existence of a valid contract where, as here, the acts alleged against defendant are not covered by the contract. In *EBC I, Inc. v. Goldman Sachs & Co.*, 7 A.D.3d 418 (1st Dept. 2004) defendant Goldman Sachs was alleged to have underpriced plaintiff EBC's shares in order to reap an additional profit on EBC's initial public offering, beyond the amount realized on the spread between the price of its own subscription and the higher public offering price when it flipped the shares in the aftermarket. *See* 7 A.D.3d at 419. EBC also alleged that Goldman Sachs had allocated these underpriced shares to its favored customers, so that they too could reap

additional profits when the underpriced shares were flipped on the aftermarket. These allocations were allegedly made in consideration for kickbacks disguised as commissions on unrelated transactions. *Id.* The trial court had dismissed EBC's claims, including one for unjust enrichment, but the First Department reversed. The appellate court reasoned that the allegedly improper benefit reaped by Goldman Sachs was recoverable by EBC and that it did not matter that kickbacks had been paid by Goldman Sachs's other customers rather than plaintiff. *See id.* at 420. The appellate court held as follows:

> The reach of equity is not so short. It suffices that defendant received benefits to which it was not entitled that were effectively conferred by plaintiff in the form of a lower price for its shares. Nor does the existence of a valid contract require dismissal of the unjust enrichment claim, since the latter is based on alleged wrongdoing not covered by the contract.

*Id.* Thus, unjust enrichment premised on defendant's alleged wrongdoing is not precluded by the existence of a written contract, because that wrongdoing is not covered by the contract.

The First Department took this theme of wrongdoing even further in reversing the trial court's dismissal of EBC's breach of contract action. The appellate court held that even though the trial court was correct that the contract between the parties did not preclude Goldman Sachs from receiving compensation from other than EBC, "it failed to properly consider the broader thrust of plaintiff's allegations that defendant breached its implied obligation of good faith and fair dealing by frustrating the overarching purpose of the offering to obtain for plaintiff the true value of its shares." *Id.* at 420. The First Department found that the issues of fact surrounding this claim were not readily determinable on a motion to dismiss. *See id.*

The *EBC* case is highly analogous to the situation here. L'Oréal's blatant and continuing refusal to resolve, or direct the YSK Companies to resolve, the intercompany payable owed to Coty offends equity and good conscience because it unjustly enriches L'Oréal. As in the *EBC*

case, it is as though L'Oréal profited by acquiring shares in the YSK Companies from Coty for less than they were worth – *i.e.*, for a discount of RMB 44,810,000 or approximately $5.9 million. Just as in *EBC* where it was the fact of the kickbacks rather than their source on which the First Department focused, here it does not matter where the extra value in the YSK Companies lies. It is the fact that L'Oréal has received profit ***over and above*** what it should have benefited through this transaction by its wrongful refusal to resolve, or direct the YSK Companies to resolve, the RMB 44,810,000 intercompany payable that offends equity and good conscience.

Nor does the Master Agreement govern the unjust enrichment of L'Oréal, whether due to the deliberate non-payment of an intercompany payable owed to Coty or otherwise. It is not so simple to say, as L'Oréal attempts, that the Master Agreement covers all obligations between Coty and L'Oréal. Plainly, the Master Agreement does not contemplate that L'Oréal would be unjustly enriched by the refusal of it and its subsidiaries, the YSK Companies, to pay the RMB 44,810,000 intercompany payable owed to Coty – a debt that remains unfulfilled following the closure of the transaction process. Simply put, what the Master Agreement does not cover is the unjust enrichment of L'Oréal through the contract process. Moreover, to the extent that deliberate non-payment of a valid intercompany payable constitutes wrongdoing, the Master Agreement does not govern.

## IV.    Coty's Claim For Conversion Is Properly Pleaded Where L'Oréal Has The Authority To Direct Payment Of The Funds Rightfully Belonging To Coty

Coty's conversion claim is properly pleaded. Coty has alleged the three basic elements of a conversion claim under New York law: "(1) intent; (2) interference with his property rights to the exclusion of his rights; and (3) possession or the right to possession." *Meese v. Miller*, 79 A.D.2d 237, 243-44 (4th Dept. 1981) (reversing dismissal by trial court and reinstating cause of

action for conversion); *accord Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2nd Dept. 2004) ("Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights."). L'Oréal has, with intent and in an unauthorized exercise of control, interfered with Coty's rights to the possession of the specifically identified RMB 44,810,000.

L'Oréal cannot be allowed to hide behind the fact that the RMB 44,810,000 intercompany payable is listed on the books of the YSK Companies, which are wholly-owned subsidiaries of L'Oréal. L'Oréal has taken this position here simply because it is expedient to do so in this forum. In the arbitration, however, L'Oréal argued the opposite – that after the post-closing purchase price adjustment process had finished, "it would then be up to **L'Oréal**, as new owner of the [YSK] Companies, to determine whether payment to Coty was appropriate."[4] L'Oréal is trying to have it both ways. But if, as it argued to the arbitrator, L'Oréal has the authority to determine whether payment is appropriate on behalf of its wholly-owned subsidiaries, then it is in control of the RMB 44,810,000 which was converted from Coty.

Moreover, L'Oréal did not, as it asserts, have a contractual right to receive the RMB 44,810,000 as a result of the post-closing purchase price adjustment. Nor does it have any legal entitlement to the RMB 44,810,000 currently still on the books of the YSK Companies as a payable owed to Coty. L'Oréal bargained for two companies and received those companies plus an extra RMB 44,810,000 of Coty's money. There is no legal entitlement to the extra value received by L'Oréal that negates Coty's conversion claim. To the contrary, it is the fact that L'Oréal still holds the RMB 44,810,000 in defiance of Coty's superior rights thereto, which support Coty's conversion claim.

---

[4]      See June 9, 2006 letter from Charles Critchlow, L'Oréal's counsel, to Ronald Forster of KPMG. The letter was attached as Exhibit O to the Jaffre Declaration (2007 Order Docket No. 12) (emphasis added).

**V.     Coty's Claim For Breach Of The Duty Of Good Faith And Fair Dealing Survives
Because L'Oréal's Act Thwarts The Overall Purpose Of The Master Agreement**

Coty's claim for breach of the duty of good faith and fair dealing survives despite

L'Oréal's arguments to the contrary.  "In New York, all contracts imply a covenant of good faith

and fair dealing in the course of performance."  *511 West 232nd Owners Corp. v. Jennifer Realty*

*Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (affirming lower court's holding that plaintiff's

allegations were sufficient to state a claim for breach of the duty of good faith and fair dealing).

"This covenant embraces a pledge that neither party shall do anything which will have the effect

of destroying or injuring the right of the other party to receive the fruits of the contract."  *Id.*

(internal quotation marks and citations omitted).

L'Oréal's suggestion that it is the YSK Companies, not L'Oréal, who must be looked to

for payment of the intercompany payable is singularly unavailing when viewed in light of the

*EBC* case.  There, the First Department found that the trial court "failed to properly consider the

broader thrust of plaintiff's allegations that defendant breached its implied obligation of good

faith and fair dealing by frustrating the overarching purpose of the offering to obtain for plaintiff

the true value of its shares."  *EBC*, 7 A.D.3d at 420.  Here, where it served its purpose, L'Oréal

asserted that it had the authority to direct payment of the intercompany payable by the YSK

Companies.[5]  (*See* Complaint, ¶ 23.)  However, L'Oréal's argument of non-responsibility

similarly misses the broader thrust of Coty's allegations that L'Oréal's receipt of the YSK

Companies with an extra RMB 44,810,000 in value on the books frustrates the overarching

purpose of the Master Agreement – to ensure Coty receives fair value in exchange for the YSK

Companies.  L'Oréal's continued refusal to pay or otherwise direct the payment of the RMB

---

[5]      L'Oréal used this argument to convince KPMG that Coty had a remedy available to receive its funds
outside the narrow confines of the purchase price adjustment mechanism.

44,810,000, which is owed to Coty and which it did not pay for, is thus a breach of the duty of good faith and fair dealing inherent in the Master Agreement.

## CONCLUSION

Wherefore, Coty respectfully requests that L'Oréal's motion to dismiss the action be denied in its entirety, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 19, 2007

SCHINDLER COHEN & HOCHMAN LLP

By:_____/s/ Steven R. Schindler_____
Steven R. Schindler (SS 3511)
Jonathan L. Hochman (JH 7072)
Daniel E. Shaw (DS 8129)

100 Wall Street, 15th Floor
New York, New York  10005
(212) 277-6300 (tel)
(212) 277-6333 (fax)

*Attorneys for Plaintiff Coty Inc.*