UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
COTY INC.,
Plaintiff,

-against-

L'ORÉAL S.A.,
Defendant.
--------------------------------------x

07 CV 6206 (KMW)
OPINION AND ORDER

KIMBA M. WOOD, U.S.D.J.:

Plaintiff Coty Inc. ("Plaintiff") asserts claims of unjust enrichment, conversion, and breach of contract against Defendant L'Oréal S.A. ("Defendant"). These claims arise from a transaction in which Defendant purchased two of Plaintiff's wholly-owned subsidiaries. On August 30, 2007, Defendant moved to dismiss Plaintiff's Complaint in its entirety for (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and (2) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Defendant's motion to dismiss is GRANTED.

## I. Background

The following facts are drawn from Plaintiff's Complaint and the Exhibits attached thereto. All inferences have been drawn in favor of Plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).

### A. The Parties

Plaintiff is a privately-held Delaware corporation with its principal place of business in New York. Compl. ¶ 6. Defendant is a publicly-traded French corporation with its corporate

headquarters in France. Id. ¶ 7.

**B. The Underlying Transaction**

On January 23, 2004, Plaintiff and Defendant executed a Master Assignment and Transfer Agreement ("Master Agreement," attached as Compl. Ex. A), pursuant to which Plaintiff agreed to sell to Defendant, and Defendant agreed to purchase, two of Plaintiff's wholly-owned subsidiaries, Yue-Sai Kan Cosmetics (Shenzhen) Ltd. ("YSK Shenzhen") and Yue-Sai Kan-Coty Cosmetics (Shanghai) Ltd. ("YSK Shanghai") (collectively, the "YSK Companies"). Compl. ¶ 10. The Master Agreement provided for a purchase price of $250,000,000, subject to a post-closing purchase price adjustment. Id.

The post-closing purchase price adjustment evaluated the difference between (1) the consolidated net worth of the YSK Companies shown in a balance sheet prepared by Plaintiff dated June 30, 2003 ("June 30, 2003 Balance Sheet") and (2) the consolidated net worth of the YSK Companies shown in a balance sheet prepared by Plaintiff within sixty days of the closing ("Closing Balance Sheet"). Master Agreement §§ 1.01(b), 1.05.

**C. The Disputed RMB[1] 44,810,000**

The current action arises from a dispute over RMB 44,810,000. In 1998, Plaintiff directed YSK Shenzhen to establish a tax reserve for a possible Chinese consumption tax that might

---

[1] "RMB" refers to the currency of the People's Republic of China, the Chinese Yuan Renminbi. Compl. 1 n. 1.

be imposed on the subsidiary. Between 1998 and 2001, this tax reserve grew to RMB 44,810,000. Compl. ¶ 17.

In April 2003, Plaintiff eliminated the tax reserve because Plaintiff then believed it was unlikely that the consumption tax would be imposed. Plaintiff established an intercompany payable on YSK Shenzhen's books due to Plaintiff in the amount of RMB 44,810,000. Compl. ¶ 18. Therefore, the June 30, 2003 Balance Sheet listed the RMB 44,810,000 as an intercompany payable. Id. ¶¶ 13, 19.

In April 2004, prior to the closing, Plaintiff eliminated the intercompany payable and increased by RMB 44,810,000 the "Total Stockholders Equity" of YSK Shenzhen. Compl. ¶¶ 14-15. As a result, the Closing Balance Sheet reflected an increase of RMB 44,810,000 in the consolidated net worth of the YSK Companies. Id. ¶ 15. According to Plaintiff, this action would allow it to realize the unresolved debt of RMB 44,810,000 through the contractual post-closing purchase price adjustment.[2] Id. ¶ 14.

On May 12, 2004, the closing took place; thereafter, Plaintiff delivered the Closing Balance Sheet to Defendant. Defendant objected to Plaintiff's treatment of the RMB 44,810,000. Compl. ¶ 16.

**D. The First Arbitral Award**

Because the parties were unable to resolve their dispute as

[2] Plaintiff alleges that other intercompany payables were resolved in the same manner without Defendant's objection. Compl. ¶ 14.

to the treatment of the RMB 44,810,000, pursuant to Master Agreement § 1.05(b)(ii), they submitted the issue to KPMG LLP ("KPMG") for arbitration. KPMG decided the dispute in favor of Defendant. Compl. ¶ 20. Specifically, KPMG concluded that under Chinese tax law, the RMB 44,810,000 tax reserve should not have been characterized as an intercompany payable on the June 30, 2003 Balance Sheet. Id. ¶ 21.

**E. The March 27, 2006 Court Order**

Plaintiff challenged the portion of the arbitral award related to the treatment of the RMB 44,810,000. In a March 27, 2006 Order ("March 27, 2006 Order," attached as Compl. Ex. B), this Court vacated that portion of the arbitral award. The Court found that under the limited arbitral authority granted to KPMG by the Master Agreement, KPMG was required to accept the characterization of the RMB 44,810,000 as an intercompany payable as stated on the June 30, 2003 Balance Sheet. March 27, 2006 Order 16. The Court therefore remanded the action to KPMG "to make findings as to the disputed RMB 44,810,000, and whether any adjustment to the Closing [Balance Sheet] involving that amount is warranted." Id. at 24.

**F. The Second Arbitral Award**

On remand, KPMG again decided in Defendant's favor. Accepting the characterization of the disputed RMB 44,810,000 as an intercompany payable on the June 30, 2003 Balance Sheet, KPMG concluded that (1) the RMB 44,810,000 was improperly treated as

an increase in "Total Stockholders Equity" on the Closing Balance Sheet and (2) this treatment artificially inflated the consolidated net worth of the YSK Companies by RMB 44,810,000. Compl. ¶ 24. KPMG therefore decided that the post-closing purchase price should be reduced by that amount and that this contractual mechanism could not be used to settle the intercompany payable. Id.

**G. The April 6, 2007 Court Order**

Plaintiff challenged the second arbitral award. In an April 6, 2007 Order ("April 6, 2007 Court Order," attached as Compl. Ex. C), this Court confirmed that award. The Court found that Plaintiff "failed to carry its heavy burden to show that [KPMG's] decision is contrary to law." April 6, 2007 Order 11. The Court confirmed that the post-closing purchase price should be reduced by RMB 44,810,000.

**H. The Current Action Before the Court**

Plaintiff has not received the RMB 44,810,000 it sought through the contractual post-closing purchase price adjustment. Therefore, Plaintiff now seeks "to resolve the RMB 44,810,000 through this equitable action." Compl. ¶ 31. Plaintiff argues that "[t]he practical effect of the confirmation of KPMG's [second arbitral] award has been to restore the [unpaid] RMB 44,810,000 intercompany payable to the Closing Balance Sheet." Id. ¶ 27. Plaintiff filed the current action in pursuit of payment of the intercompany payable by Defendant.

On August 30, 2007, Defendant moved to dismiss Plaintiff's Complaint for (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and (2) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Defendant argued that (1) if the Master Agreement does not control payment of the RMB 44,810,000, then the Master Agreement does not provide personal jurisdiction over Defendant; (2) this action is precluded by the KPMG arbitral awards and the Court's previous decisions; (3) Plaintiff cannot state a claim of unjust enrichment; (4) Plaintiff cannot state a claim of conversion; (5) Plaintiff cannot state a claim of breach of contract; and (6) Defendant should be awarded attorneys' fees and costs. Plaintiff opposes the motion to dismiss and the award of attorneys' fees. The Court holds that this action should be dismissed in its entirety for failure to state a claim upon which relief can be granted, but denies the award of attorneys' fees.

**II. Discussion**

**A. Rule 12(b)(2) Motion to Dismiss**

Master Agreement § 9.09 constitutes a contractual forum selection clause ("forum selection clause"). Defendant argues, however, that if the Master Agreement does not control payment of the RMB 44,810,000, then the forum selection clause does not apply. Def.'s Mem. 13 n. 9; Def.'s Reply Mem. 4 n. 3. The Court disagrees and holds that the forum selection clause provides personal jurisdiction over Defendant.

In weighing a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a contractual "forum selection clause is enforceable unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." New Moon Shipping Co., Ltd. v. Man B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)(quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

The unambiguous language of the forum selection clause provides personal jurisdiction in the United States District Court for the Southern District of New York for any "legal action" regarding the "obligations . . . arising out of . . . the transactions contemplated by this Agreement or disputes relating hereto." Master Agreement § 9.09. The current action arises out of a dispute over payment of the RMB 44,810,000. Although the Master Agreement may not control the outcome, the dispute itself is clearly related to the transaction contemplated by the Master Agreement.[3] Defendant therefore fails to demonstrate any of the four narrow exceptions required to render "unreasonable," the enforcement of the forum selection clause. See Roby v. The Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)(quoting The

[3]Master Agreement § 4.02(b) even addresses payment obligations owed by the YSK Companies to Plaintiff. This provision states that "on or prior to the Closing Date, [Plaintiff] shall be permitted to settle all or any portion of any inter-company obligation as between [Plaintiff] and the [YSK] Companies." § 4.02(b) therefore allowed, but did not require, Plaintiff to seek payment of the RMB 44,810,000 from the YSK Companies pre-closing. This provision does not control payment of the RMB 44,810,000 post-closing, but it clearly demonstrates that the current dispute arises from the transaction contemplated by the Master Agreement.

Bremen, 401 U.S. at 12-13, 15, 18)). The Court has personal jurisdiction over Defendant.

**B. Rule 12(b)(6) Motion to Dismiss**

A defendant may move to dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In weighing a motion to dismiss, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." Allaire Corp., 433 F.3d at 249-50 (internal quotation marks and citation omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 n.8 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

**1. Preclusion**

Defendant argues that Plaintiff's current action is precluded by the previous arbitral awards and the Court's earlier decisions. Def.'s Mem. 5 n. 1, 9 n. 7, 12; Def.'s Reply Mem. 4. The Court disagrees and holds that this action is not precluded.

"[I]t is well settled that a court may dismiss a claim on res judicata . . . grounds on a Rule 12(b)(6) motion." Sassower v. Abrams, 833 F. Supp. 253, 264 n. 18 (S.D.N.Y. 1993). Res judicata "applies to preclude later litigation if [an] earlier

decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985). "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Dalow Indus., Inc. v. Jordache Enter., Inc., 631 F. Supp. 774, 778 (S.D.N.Y. 1985)(internal quotation marks and citations omitted).

The KPMG arbitral awards, this Court's previous orders, and the current action all arise from the single "set of operative facts" underlying Defendant's purchase of the YSK Companies. Id. However, the Court has not previously reviewed payment of the RMB 44,810,000 outside of the context of the contractual post-closing purchase price adjustment. April 6, 2007 Order 10-11. KPMG's arbitral authority was limited to resolution of the post-closing purchase price adjustment. Master Agreement § 1.05(b). The Court's review of the KPMG arbitral awards was limited to whether KPMG exceeded its arbitral authority. March 27, 2006 Order 20 n. 9; April 6, 2007 Order 10-11. The current equitable action therefore was not, nor could it have been, previously raised before KPMG or this Court. Thus, dismissal under the res judicata factors is not warranted and the Court finds that this action is not precluded.

**2. Unjust Enrichment Claim**

Defendant argues that Plaintiff failed to state a claim of unjust enrichment. The Court agrees and finds that Plaintiff's quasi-contract claim must be dismissed.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006)(citation omitted). New York law is clear that a party may not "seek damages in an action sounding in quasi contract" where there exists "a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (N.Y. 1987).

This claim must be dismissed because Plaintiff fails to allege that Defendant has benefitted. Plaintiff alleges that the intercompany payable listed on the June 30, 2003 Balance Sheet remained listed as an intercompany payable on the Closing Balance Sheet. Compl. ¶¶ 28, 34. Plaintiff further alleges that the RMB 44,810,000 remains unpaid. Id. at ¶ 34. Plaintiff fails to allege, however, that Defendant or the YSK Companies eliminated the intercompany payable from the books of the YSK Companies. The RMB 44,810,000 liability therefore remains on the balance sheet of the YSK Companies and the value of the YSK Companies to

Defendant has not changed.[4] The Court must dismiss Plaintiff's claim of unjust enrichment.

### 3. Conversion Claim

Defendant argues that Plaintiff failed to state a claim of conversion. The Court agrees and finds that Plaintiff's conversion claim must be dismissed.

Under New York law, "[c]onversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997)(citation omitted). "[C]onversion occurs when there is a refusal to return the property after a demand." Hoffman v. Unterberg, 9 A.D.3d 386, 388 (2d Dep't 2004)(citation omitted). "Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." Id. Plaintiff argues that the RMB 44,810,000 is a specifically identifiable sum of money that Defendant must return to Plaintiff. Compl. ¶ 41. Despite Plaintiff's demand on Defendant for the RMB 44,810,000, Defendant has refused to return that sum. Id. ¶ 43.

---

[4]According to Plaintiff's allegations, the balance sheets of the YSK Companies before and after closing both contain an intercompany payable in the amount of RMB 44,810,000. If the YSK Companies were to now resolve this intercompany payable, then the assets of the YSK Companies would be reduced by RMB 44,810,000 and the liability would be eliminated. The value of the YSK Companies, however, would remain the same. Therefore, Plaintiff's allegation that the YSK Companies remain liable for an intercompany payable in the amount of RMB 44,810,000 undermines Plaintiff's argument that Defendant has benefitted.

Plaintiff's argument relies on a flawed assumption that demanding the RMB 44,810,000 from Defendant is equivalent to demanding the RMB 44,810,000 from the YSK Companies. Plaintiff readily acknowledges that "the RMB 44,810,000 [is] currently still on the books of the YSK Companies as a payable owed to [Plaintiff]." Pl.'s Mem. 11. However, Plaintiff fails to allege that it made a demand on the YSK Companies for the RMB 44,810,000.

Plaintiff cannot rely on the demand made on Defendant to satisfy the demand requirement. First, Plaintiff fails to point to, and the Court cannot find, any provision of the Master Agreement under which Defendant assumed the liabilities of the YSK Companies.[5] Second, "the law respects separate corporate identities even where one corporation may wholly own another." Gradinger v. Pioneer Life Ins. Co., 2004 U.S. Dist. LEXIS 14064,

---

[5]In the pre-closing context, the Master Agreement presented Plaintiff with the option of seeking payment of the RMB 44,810,000 directly from the YSK Companies. § 4.02(b). Plaintiff fails to allege that it undertook any effort to seek such a pre-closing payment.

In the absence of any controlling contractual provision, Plaintiff now reasons that post-closing, the RMB 44,810,000 liability of the subsidiaries became a liability of the parent corporation. This reasoning is misplaced. Prior to the closing, Plaintiff was the parent corporation of the YSK Companies. Plaintiff then considered the RMB 44,810,000 owed by the YSK Companies to Plaintiff as a liability of the YSK Companies. Certainly, Plaintiff does not allege that as the pre-closing parent corporation, it was responsible for this liability. After the closing, Defendant became the parent corporation of the YSK Companies. The RMB 44,810,000 owed by the YSK Companies to Plaintiff remains a liability of the YSK Companies. Now, however, Plaintiff alleges that the post-closing parent corporation, Defendant, is responsible for this liability. Neither the Master Agreement nor logic support such a conclusion.

*11 (S.D.N.Y. July 22, 2004)(holding that service of process on a parent corporation does not constitute service of process on a subsidiary)(internal quotation marks and citations omitted). Because Plaintiff failed to make a demand on the YSK Companies, the Court must dismiss Plaintiff's claim of conversion.[6]

**4. Breach of Contract Claim**

In the alternative, Plaintiff claims breach of contract. Compl. ¶¶ 46-52. Plaintiff frames this claim as a breach of the duties of good faith and fair dealing, arguing that Defendant's failure to pay the RMB 44,810,000 "frustrates the overarching purpose of the Master Agreement - to ensure [Plaintiff] receives fair value in exchange for the YSK Companies." Pl.'s Mem. 12. Plaintiff's argument is misplaced. The Court finds that the breach of contract claim must be dismissed.

Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153

[6]The Court does not hold that the YSK Companies are legally obligated to pay to Plaintiff the RMB 44,810,000. If Plaintiff demands that the YSK Companies effect such a payment, the YSK Companies may challenge the characterization of the RMB 44,810,000 as an intercompany payable and present other defenses. However, if (1) the YSK Companies are held responsible for payment of the RMB 44,810,000, and (2) Defendant interferes with payment by the YSK Companies, see Meese v. Miller, 79 A.D.2d 237, 244 (4th Dep't 1981), then a claim of conversion against Defendant may lie.

(N.Y. 2002)(internal quotation marks and citations omitted). For Plaintiff, "the fruit[] of the contract" is the bargained-for purchase price of the YSK Companies, subject to the post-closing purchase price adjustment.[7] Plaintiff does not allege that Defendant impaired Plaintiff's ability to receive that sum.

Plaintiff instead attempts to read into the contract an obligation on the part of Defendant to assume the liabilities of the YSK Companies. The Master Agreement, however, does not control payment of the RMB 44,810,000.[8] The Court therefore cannot, on breach of contract grounds, impose such a payment obligation on Defendant. To do so would improperly extend the reach of the duties of good faith and fair dealing.[9] The Court

---

[7] Plaintiff does not allege that Defendant failed to comply with the post-closing purchase price adjustment. Indeed, Master Agreement § 1.05 has been given full effect through the previous arbitral awards and Court decisions. Plaintiff instead alleges that the Master Agreement "provides for other remedies" in the event that the post-closing purchase price adjustment does not control payment of the RMB 44,810,000. Compl. ¶ 49. Despite this allegation, Plaintiff does not, and cannot, point to any provision of the Master Agreement that Defendant violated.

[8] Master Agreement § 4.02(b), the only provision of the contract addressing the payment of intercompany obligations, allowed, but did not require, Plaintiff to seek payment of the RMB 44,810,000 from YSK Shenzhen prior to or at the closing. Although this provision may control the pre-closing payment obligations, it clearly does not control the post-closing payment obligations. Furthermore, Master Agreement § 9.03 states that the Master Agreement "constitute[s] the entire understanding between the parties with respect to the subject matter hereof, and supersede[s] all other understandings and negotiations with respect thereto." This merger clause weighs heavily against imposing a payment obligation that the contract clearly does not envision.

[9] The dispute over the RMB 44,810,000 differs dramatically from the situation presented in EBC I, Inc. v. Goldman Sachs & Co., 7 A.D.3d 418 (1st Dep't 2004). In EBC I, the plaintiff alleged that the defendant deliberately "underpriced [the] plaintiff's shares in order

must dismiss Plaintiff's claim of breach of contract.

**C. Attorneys' Fees and Costs**

The Court declines to award to Defendant attorneys' fees and costs. A court may award "excess costs, expenses, and attorneys' fees reasonably incurred" on account of an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (2007). In the Second Circuit, the award of attorneys' fees under § 1927 or the Court's inherent powers is "authorized only when there is a finding of conduct constituting or akin to bad faith." Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997)(citations omitted). Such an award is "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." In re 60 East 80th Street Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)(internal quotation marks and citations omitted). Defendant argues that "[t]he instant Complaint filed by [Plaintiff] presents just such a case."[10] Def.'s Mem. 18. The Court

---

to reap an additional profit." Id. at 419. The plaintiff's allegations sufficiently stated that the defendant breached "its implied obligation of good faith and fair dealing by frustrating the overarching purpose of the offering to obtain for [the] plaintiff the true value of its shares." Id. at 420. Here, Defendant's full compliance with the post-closing purchase price adjustment fulfills the overarching purpose of the contract to effect the sale of the YSK Companies. Defendant's refusal to pay to Plaintiff the RMB 44,810,000, a payment obligation not assumed under the Master Agreement, in no way undermines this overarching purpose.

[10]Defendant's reliance on a single case to demonstrate this point is misplaced. In Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc., the Court awarded to the defendant attorneys' fees

disagrees.

In the present case, KPMG's arbitral authority was restricted to application of the post-closing purchase price adjustment. KPMG could not address payment of the RMB 44,810,000 outside of that contractual mechanism. Plaintiff therefore presents this Court with equitable arguments that were not, and could not have been, presented earlier. The Court finds Plaintiff's current claims to be without merit, but their presentation does not rise to the level of bad faith required for an award of attorneys' fees and costs. The Court therefore declines to award to Defendant attorneys' fees and costs.

**III. Conclusion**

The April 6, 2007 Order confirmed KPMG's conclusion that Plaintiff's elimination of the RMB 44,810,000 intercompany payable and inflation of the "Total Stockholders Equity" of the YSK Companies, "shift[ed] the burden from the YSK Companies to [Defendant]." 11. Thus, the Court implied that the burden of the intercompany payable fell upon the YSK Companies. The Court's holding today reinforces that implication. If any entity must pay to Plaintiff the RMB 44,810,000, then it is the responsibility of the YSK Companies. Defendant is neither contractually nor

---

and costs. 1991 U.S. Dist. LEXIS 8976, *15-16 (S.D.N.Y. July 3, 1991). The Court found that the plaintiff's challenge to an arbitral award "was wholly devoid of merit." Id. at *15. The plaintiff had sought "to avoid confirmation of the [arbitral] panel's award based on the same arguments the [arbitral] panel explicitly rejected" and "clearly had no reasonable chance of prevailing." Id. In the present case, Plaintiff presented the Court with equitable arguments that were not, and could not have been, presented earlier.

equitably liable for the RMB 44,810,000.

Therefore, Defendant's motion to dismiss [Docket Entry 9] is granted. The Court finds that it has personal jurisdiction over Defendant. The Court finds that this action is not precluded by the previous arbitral awards or Court decisions. The Court dismisses Plaintiff's claims of unjust enrichment, conversion, and breach of contract. The Court declines, however, to award to Defendant attorneys' fees and costs. The Clerk of Court is therefore directed to close this case; any pending motions are moot.

SO ORDERED.

DATED: New York, New York
February 1, 2008

Kimba M. Wood

KIMBA M. WOOD
United States District Judge